1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11  JASDEV SINGH,                                   CASE NO. 1:12-cv-00498-AWI-SKO

12              Plaintiff,

13       v.                                          **FINDINGS AND
                                                     RECOMMENDATIONS THAT
14                                                   DEFENDANT'S MOTION TO
     UNITED STATES DEPARTMENT                        DISMISS BE GRANTED IN PART,
15   OF HOMELAND SECURITY,                           DENIED IN PART**

16                                                   **(Docs. 19, 31)**
              Defendant.
17                                                   **FINDINGS AND
                                                     RECOMMENDATIONS REGARDING
18                                                   SCREENING OF PLAINTIFF'S
                                                     COMPLAINT**

19

20                                                   **OBJECTIONS DUE:  28 DAYS**

21  _____/

22                          **I.    INTRODUCTION**

23       On April 2, 2012, Plaintiff Jasdev Singh ("Plaintiff") filed a complaint against the United

24  States Department of Homeland Security ("Defendant" or "DHS") asserting claims pursuant to

25  5 U.S.C. § 552a.  (Doc. 1.)  Plaintiff is currently incarcerated at Adams County Correctional

26  Complex ("ACCC") and is proceeding in this matter *in propria persona*.  On December 6, 2012,

27  Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment.  (Docs.

28  19, 20.)  On December 26, 2012, Plaintiff filed an opposition to Defendant's motion, a declaration

in support of the opposition, and a statement of undisputed facts. (Docs. 24, 25, 26.) On January 9, 2013, Defendant filed a reply. (Doc. 30.) On January 28, 2013, Plaintiff filed a motion seeking leave to file a counter-declaration in response to the declaration of Yoshinori H.T. Himel filed in support of Defendant's reply brief. (Doc. 31.) On January 29, 2013, Defendant filed a Notice of Erratum to the reply brief. (Doc. 32.) On February 14, 2013, Plaintiff filed a response to Defendant's notice of erratum and a reply to Defendant's opposition to Plaintiff's motion to file a counter-declaration in sur-reply. (Doc. 33.) On February 25, 2013, Plaintiff filed a request for judicial notice. (Doc. 34.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for leave to file a counter-declaration in sur-reply be GRANTED, and Defendant's motion to dismiss be GRANTED IN PART and DENIED IN PART. It is further RECOMMENDED that, upon *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's first, second, third, and sixth causes of action be dismissed without prejudice and with leave to amend, and Plaintiff's fourth cause of action be dismissed with prejudice and without leave to amend.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint arises out of criminal proceedings in which Plaintiff ultimately pled guilty to felony charges. Plaintiff is an alien who claims that, in negotiating his plea agreement, and at other times during the course of the criminal proceedings against him, it was represented to him by the government, including an agent of the U.S. Immigration and Customs Enforcement ("ICE"), that he would not be subject to deportation based on his plea because he was granted asylum by the San Francisco Immigration Court on April 5, 2000.[1] (Doc. 1, ¶¶ 10-12.) In exchange for his agreement to plead guilty, the government recommended that Plaintiff be (1) placed in a minimum

---

[1] Plaintiff asserts in his opposition brief (Doc. 24), his statement of undisputed facts (Doc. 26), and his declaration filed in support of his opposition (Doc. 25) that at a "safety valve interview held on September 15, 2009, DHS Special Agent Phillip H. Mauerer, in the presence of defense counsel and AUSA Escobar, confirmed that by virtue of the San Francisco, California, Immigration Court's April 5, 2000, Order granting [Plaintiff's] application for asylum, [Plaintiff] would not be subject to deportation as a result of [his] conviction for a drug trafficking offense." (Doc. 25, Singh Decl., ¶ 12; *see also* Doc. 24, p. 4; Doc. 26, p. 2, ¶ 3.) In his complaint, Plaintiff refers to assurances by "agents of the Department of Homeland Security, Bureau of Immigration and Customs, Bakersfield, California," that the April 5, 2000, grant of asylum rendered him "non-deportable." Plaintiff alleges that he was assured by the government at various stages of his criminal proceedings and during plea negotiations that he was "non-deportable." (Doc. 1, ¶¶ 10-12.)

1   security prison; (2) permitted to participate in a Residential Drug Abuse Treatment Program

2   ("RDAP"); and (3) permitted to participate in a Residential Reentry Program ("RRC"). (Cmplt.,

3   Doc. 1, ¶ 11.)  The Court ordered that Plaintiff be incarcerated for a period of 84 months and

4   recommended Plaintiff's placement in a minimum security prison and his participation in RDAP and

5   RRC. (Cmplt., Doc. 1, ¶ 12.)

6        Despite assurances of his non-deportable status, following Plaintiff's sentencing, an

7   immigration detainer was issued by ICE on December 7, 2011. (Complt., Doc. 1, ¶ 15; Doc. 1, p.

8   22, Exh. 1.) Plaintiff asserts that the issuance of the immigration detainer caused the Federal Bureau

9   of Prisons ("BOP") to categorize Plaintiff with a Public Safety Factor ("PSF") for "deportable alien."[2]

10  (Cmplt., Doc. 1, ¶ 13.)  Plaintiff asserts that, pursuant to 18 U.S.C. § 3621(e), a PSF designation

11  prevents an inmate from being designated to a minimum security facility and prohibits participation

12  in the RDAP and RRC programs. (Cmplt., Doc. 1 ¶¶ 13-14.)  As such, Plaintiff was transferred to

13  ACCC, a low-security facility in Mississippi and is prohibited from being transferred to a facility

14  closer to family or participating in the RDAP and RRC programs. (Doc. 1, ¶ 14.)

15       After Plaintiff was transferred to ACCC, his defense counsel contacted the Chief of Unit

16  Management at ACCC to request that Plaintiff be transferred to a facility closer to his family.

17  (Cmplt., Doc. 1, ¶ 18.)  Plaintiff's counsel's letter states, in relevant part:

18         The purpose of my contact with you is to address what appears to be an
           oversight, relative to BOP's determination on Mr. Singh's eligibility to participate in
19         the RDAP program.  First, and as a preliminary matter, prior to the entry of his plea[,]

21      [2] A Public Safety Factor ("PSF") is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and
22  protection of the public.  Public Safety Factors are normally applied on the Inmate Load and Security Designation Form (BP-337) prior to an inmate's initial assignment to an institution, however, additions or deletions may be made at any time
23  there after via the Custody Classification Form, (BP-338).  BOP Program Statement ("P.S.") 5100.08, Chapter 5, p. 7. The PSF for "Deportable Alien" is defined as follows:

24         A male of female inmate who is not a citizen of the United States . . . The PSF shall not be applied,
25         or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive
           Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted
26         or there is a finding not to deport at the completion of deportation proceedings . . . .

27  BOP P.S. 5100.08, Chapter 5, p. 8.  DHS represents that the PSF designation was in place before the immigration detainer was issued, and Plaintiff was designated to ACCC on July 27, 2011, pursuant to BOP policy. (Doc. 19-4, Miller
28  Decl., ¶ 5.)  Based on BOP's Program Statement PSF descriptions, it appears that a PSF of "deportable alien" applies to any prisoner "who is not a citizen of the United States," regardless of whether ICE has issued an immigration detainer.

3

Mr. Singh was housed at the Lerdo facility in California. An item of particular concern in Mr. Singh's agreement to enter his plea was his all but certain admission into the RDAP program. In our conversation of yesterday afternoon, you confirmed that your facility (Adams) does not/is not equipped to allow participation in the RDAP program. This brings me to the essential purpose of this letter: to request that Mr. Singh be transferred to a facility which does offer the RDAP program, and specifically, a facility in (or at least closer to) California, so that Mr. Singh's three (3) daughters and wife can visit him.

In corresponding with our client and his family, I have learned that Mr. Singh has made significant efforts to address this housing "problem," so to speak, to no avail. Specifically, I am informed that he has already (in writing and otherwise), notified his case Manager (Ms. Tyler), his counselor (Mr. Kennedy), and has at least attempted to address it with his BOP representative – Ms. "Mott Donna." Regrettably, his status and housing location has remained unchanged. In reviewing the documentation appurtenant to Mr. Singh's above described efforts, I located a note (which I am informed that you prepared) that states that you determined Mr. Singh is "ineligible" for participation in RDAP because you are under the impression that Mr. Singh is an "illegal alien." Enclosed herewith please find a copy of Mr. Singh's "Green Card." As you can see, Mr. Singh is a legal resident of the United States, and has had legal status at all times relevant to his case.

(Cmplt., Doc. 1, Exh. 3, p. 30-31.)

On December 20, 2011, ACCC's Warden responded to Plaintiff's counsel as follows:

I am in receipt of your inquiry dated December 2, 2011[,] regarding inmate Jasdev Singh (64003-097). In this correspondence, you make inquiry as to why Mr. Singh is not eligible for participation in a RDAP program. Furthermore, you address what "appears to be an oversight" in designating Mr. Singh to [ACCC] and request this inmate's transfer to a more suitable facility.

As outlined in Bureau of Prisons Program Statement 5111.01, inmates at Hearing Sites (pending hearing) and inmates at Release Sites (with orders of deportation) shall not normally be considered for transfer for program participation (i.e., education programs, drug treatment), or for nearer release purposes. As this is the case with your client, inmate Singh has been provided with a copy of the Bureau Immigration and Customs Enforcement (BICE) detainer which has been placed against him.

Regarding the practices of BICE, your inquiry can certainly be more thoroughly addressed by contacting BICE directly. Accurate contact information is provided below for your reference:

Jean ICE Office
Attention: Special Agent in Charge
830 Pinehill Road
Jena, LA 71342

(Cmplt., Doc. 1, Exh. 4, p. 33.)

On January 17, 2012, Plaintiff mailed a letter to an ICE facility located at 1010 East Whatley Road, Oakdale, LA, 71463 requesting that ICE amend its records and rescind the immigration detainer. (Cmplt, Doc. 1, ¶ 20.) Receiving no response to this request, on February 2, 2012, Plaintiff

1  sent a letter to an ICE facility located at 830 Pinehill Road, Jena, LA, requesting removal of the

2  immigration detainer, but received no response to his request.  (Cmplt., Doc. 1, ¶ 21.)

3        On March 13, 2012, in a third request to remove the immigration detainer, Plaintiff sent a

4  letter to an ICE facility located at 800 Truxton Avenue, Suite 109, Bakersfield, CA, 93301, asking

5  that the immigration detainer be removed based on assurances during his plea negotiation that he was

6  "non-deportable." (Cmplt., Doc. 1, ¶ 22.)  Plaintiff sent a copy of this March 13, 2012, letter to 1010

7  East Whatley Road, Oakdale, LA, 71463; the U.S. Attorney's Office located at 2500 Tulare Street,

8  Fresno, CA, 93721; and Plaintiff's counsel in Fresno, California.  (Cmplt, Doc. 1, ¶ 23.)[3]

9        On April 2, 2012, Plaintiff filed this action, asserting seven causes of action:  (1) violation

10  of accuracy and disclosure provisions pursuant to 5 U.S.C. § 552a(e)(6); (2) violation of the Privacy

11  Act's rules of conduct pursuant to 5 U.S.C. § 552a(e)(9); (3) failure to establish appropriate

12  administrative, technical and/or physical safeguards pursuant to 5 U.S.C. § 552a(e)(10); (4) access

13  criminal penalties pursuant to 5 U.S.C. § 552a(i)(1); (5) declaratory and injunctive relief pursuant

14  to 5 U.S.C. § 552a(g)(2)(A); (6) damages pursuant to 5 U.S.C. § 552(a)(g)(1)(A)-(D); and

15  (7) intentional/reckless infliction of emotional distress.[4]

16

17

18

19

20        [3] Plaintiff sent additional letters on March 29 and April 30, 2012, to BOP at Grand Prairie Complex, 346
21  Marines Forces Dr., Grand Prairie, Texas, 75051, requesting removal of the PSF designation. (Doc. 24, p. 15.) On May
    12, 2012, he sent his request for removal of the PSF designation to BOP's General Counsel located at 320 First Street,
22  N.W., Room #933, Washington, D.C., 20534.  Plaintiff also states that he served the same request on May 4, and 13,
    2012, directed to BOP's Office of the Chief Counsel, the Office of General Counsel, and the Designations &
23  Computations Center in Grand Prairie, Texas.  (Doc. 25, Singh Decl., ¶¶ 28-30; *see also* Doc. 24, p. 15-16.)

24        [4] On October 2, 2012, Plaintiff filed a petition for a writ of habeas corpus in his criminal case, case number
    1:08-cr-212-2-AWI, docket number 477, that contains significantly overlapping factual allegations.  In his habeas
25  petition, Plaintiff asserts that he was denied his Fifth and Sixth Amendment rights to due process of law and effective
    assistance of counsel when the government breached the plea agreement by affirmatively agreeing with the Bureau of
26  Prisons to categorize Plaintiff with a PSF for deportable alien.  Plaintiff maintains that this was fundamentally
    inconsistent with the Government's assurances that in exchange for pleading guilty, Plaintiff would be deemed non-
27  deportable and would be: (1) placed in a minimum security prison, (2) permitted to participate in the RDAP program;
    (3) permitted to participate in RRC; and (4) permitted to be reunited with his family at the earliest possible time after
28  the requisite credit he would have earned as a result. *Singh v. United States*, 1:08-cr-00212-AWI, Docket No. 477, p.
    3-4.

5

## III.   PLAINTIFF'S MOTIONS AND REQUESTS

**A.   Plaintiff's Motion for Leave to File a Counter-Declaration in Sur-reply**

On January 28, 2013, Plaintiff filed a motion seeking leave to file a counter-declaration in sur-reply to the declaration of Mr. Himel in support of Defendant's reply brief. (Doc. 31.) Plaintiff asserts that he has not had "an opportunity to respond to the specific and central issue raised for the first time in Defendant's Reply brief" that neither Jena, Louisiana, Oakdale, Louisiana, or Bakersfield, California, have ICE field offices at the locations where Plaintiff claims he sent his Privacy Act requests for record amendment.  Plaintiff seeks leave to file a counter-declaration to show that (1) the "accurate" address to contact the ICE office at Jena, Louisiana, was provided by ACCC's Warden; (2) Plaintiff does not have access to the internet to verify whether the address provided by the Warden was inaccurate; and (3) no other available resources at ACCC indicates that the ICE facilities in Oakdale, Jena, and Bakersfield where Plaintiff directed his requests are ***not*** field offices.  (Doc. 31, p. 2-3.)

On January 29, 2013, Defendant filed an "Erratum to Reply Filed January 9, 2013, and Response to Request to File Surreply." (Doc. 32.)  Defendant's erratum notes that the reply brief filed on January 9, 2013, was missing its page 11, and the missing page was attached to the erratum filing. Defendant also objected to Plaintiff's request to file a counter-declaration in sur-reply because the Local Rules authorize no sur-replies, and Plaintiff's "claimed ignorance on the issue he raised, ICE field offices, is unpersuasive because his attorney, who received the contract warden's letter, had the Internet access plaintiff says he lacks." (Doc. 32.)  Defendant also argues that such "excuses are immaterial to subject[-]matter jurisdiction."  (Doc. 32.)

On February 14, 2013, Plaintiff filed a response to Defendant's erratum and a reply to Defendant's opposition to Plaintiff's motion for leave to file a counter-declaration in sur-reply. (Doc. 33.)  Plaintiff asserts that he sent another request for record amendment to the ICE field office located at 1250 Poydras, Suit 325, New Orleans, LA, 70113, but as of the date of his filing, he had not received any response.

The issue of whether Plaintiff has properly exhausted his administrative remedies under the Privacy Act was raised in the motion to dismiss.  Plaintiff's opposition, supporting declaration, and

statement of undisputed facts set forth the steps he took to request that DHS amend his records, and the opposition makes the assertion that the locations where Plaintiff sent his letters were field offices, satisfying DHS' regulations for seeking record amendment. (Oppo., Doc. 24, p. 12-16.)[5] DHS' reply brief maintains that none of the locations where Plaintiff sent his letters is a DHS "field office," thus Plaintiff failed to satisfactorily initiate or complete the administrative process to request record amendment. As there is no hearing on this motion pursuant to Local Rule 230(l), fairness dictates that Plaintiff have an opportunity to address DHS' argument in this regard. Thus, Plaintiff's motion for leave to file a counter-declaration in sur-reply should be GRANTED.

**B.   Plaintiff's Request for Judicial Notice**

On February 25, 2013, Plaintiff filed a request for judicial notice pursuant to Federal Rule of Evidence 201. (Doc. 34.) The document Plaintiff seeks to have judicially noticed is a "Notice to Appear" issued by DHS on February 13, 2013, requiring Plaintiff to appear at the Oakdale Federal Detention Center located at 1900 E. Whatley Road, Oakdale, Louisiana, 71463, for removal proceedings under Section 240 of the Immigration and Nationality Act. (Doc. 34, Exh. 1.) The document is signed by "John Hartnett, Assistant Field Office Director." (Doc. 34, p. 7.) Under his signature, the document lists "Jena, LA" as the City and State. (Doc. 34, p. 7.) Plaintiff asserts the document shows that John Hartnett, an Assistant Field Office Director, is located in Jena, Louisiana, and this establishes that Jena, Louisiana, is an ICE field office. (Doc. 34, p. 2-9. ("Plaintiff requests the Court to take Judicial Notice of the fact that, John Hartnett, Assistant Field Office Director, in Jena, Lousiana issued the said Notice to Appear.").)

Pursuant to Federal Rule of Evidence 201, a trial court may take jducial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). As discussed in *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005), with regard to Rule 201, the advisory committee notes explain that "[a] high degree of indisputability is the essential prerequisite" to taking judicial notice

---

[5] Page citations to Plaintiff's briefs and supporting materials reference the pagination in the brief or supporting materials and not the CM/ECF pagination at the top of the page of the filed documents.

of adjudicative facts and that "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a), (b), advisory committee's notes.  While the existence and authenticity of a document which is a matter of public record is judicially noticeable, the veracity and validity of the contents of such documents are not. *See, e.g., Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein).

Here, the "Notice to Appear" is a DHS record in removal proceedings against Plaintiff, and records and reports of administrative bodies are subject to judicial notice.  *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  DHS has not objected to Plaintiff's request, nor disputed the authenticity of the document.  The court may take judicial notice of the *existence* of the document, but to the extent that Plaintiff requests the Court take judicial notice of the facts contained within the document, the Court may not do so.  Plaintiff's request for judicial notice should be granted as to the existence of the Notice to Appear, but not as to the veracity and truthfulness of the facts recited therein.[6]

## IV.   DISCUSSION

**A.    Defendant's Motion to Dismiss for Failure to Exhaust Should Be Considered Under Rule 12[7]**

Defendant files its motion to dismiss pursuant to Rule 12 and, alternatively, under Rule 56. Defendant seeks dismissal of three of Plaintiff's claims based on lack subject matter jurisdiction, which are properly considered under Rule 12(b)(1).  For the remainder of Plaintiff's claims, Defendant asserts that none is exhausted under the Prisoner Litigation Reform Act of 1995 ("PLRA").

---

[6] Plaintiff's argument regarding what he believes this document tends to prove is discussed herein.

[7] Plaintiff was provided with notice pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) on December 12, 2012, (Doc. 23) as well as in the body of the motion to dismiss filed by Defendant on December 6, 2012. (Doc. 19).  *See Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012); *see also Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

1   "[T]he PLRA does not impose a pleading requirement" on plaintiff, but rather "creates a

2   defense," with respect to which "defendants have the burden of raising and proving the absence of

3   exhaustion." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Because "[t]he failure to

4   exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement,"

5   it "is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."

6   *Id.*; *see also Ritza v. Int'l Longshoremen's &Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir.

7   1988) (finding that while no defense described in 12(b)(1) through (7) encompasses failure to

8   exhaust, federal courts traditionally have entertained certain pre-answer motions not expressly

9   provided for by rule, and authority to hear such motions lies within the federal court's inherent power

10  to regulate actions pending before it). The proper motion to bring when asserting failure to exhaust

11  administrative remedies, therefore, is an unenumerated 12(b) motion. In considering an

12  unenumerated motion to dismiss, "the court may look beyond the pleadings and decide disputed

13  issues of fact." *Wyatt*, 315 F.3d at 1120.

14  **B.     Privacy Act Claims**

15          Plaintiff's complaint sets forth six causes of action that purport to state claims under the

16  Privacy Act, 5 U.S.C. § 552a. The Privacy Act "regulate[s] the collection, maintenance, use, and

17  dissemination of information by [federal] agencies" and provides a private cause of action against

18  federal agencies for violating the Act's provisions. *Doe v. Chao*, 540 U.S. 614, 618 (2004); 5 U.S.C.

19  § 552a(g)(1) (explaining any individual may bring a civil action against the agency for violation of

20  the Act). The proper defendant in a Privacy Act action is an agency, not individual employees.

21  *Armstrong v. U.S. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997) (noting the term agency

22  "does not include individual officers or employees of an agency"); *Wheeler v. Gilmore*, 998 F. Supp.

23  666, 668 (E.D.Va. 1998) (noting "an agency is the only proper defendant under the Act and,

24  therefore, individuals may not be named as defendants in such actions").

25          The Privacy Act allows individuals to make a written request for records maintained by

26  government agencies, *id.* § 552a(d), and compels the government to maintain accurate information

27  within these records, *id.* § 552a(e)(5). When an agency fails to comply with the Act, the statute

28  provides civil remedies, places jurisdiction within the federal court, and authorizes the court to order

9

1    injunctive relief, actual damages, or attorney's fees, depending upon the circumstances. *Id.*

2    § 552a(g).

3    As discussed below, there are different types of civil claims available to an individual under

4    the Privacy Act, based on the particular failure of the agency at issue. *Id.* § 552a(g)(1)(A)-(D).

5    **1.    Amendment Claims**

6    Category A claims are those seeking amendment of any agency's records.  Pursuant to

7    5 U.S.C. § 552a(d)(2), each agency that maintains a system of records shall permit an individual to

8    request amendment of a record pertaining to him. *Id.*  The agency is required to acknowledge such

9    a request in writing within 10 days after the date of receipt of such a request.  The agency may either

10   make the requested correction or inform the individual of its refusal to amend the record in

11   accordance with the request, the reasons for the refusal, and the procedures available for the

12   individual to seek review of that refusal by the head of the agency or the officer designated by the

13   head of the agency. *Id.* § 552a(d)(2)(A)-(B).

14   If the agency refuses to amend the record, an individual who disagrees with that

15   determination may request review of the refusal, and the agency is required to review the refusal

16   within 30 days from the date on which the individual requests review.  If the reviewing official also

17   refuses to amend the record in accordance with the request, the individual must be permitted to file

18   with the agency a concise statement setting forth his or her reasons for disagreement with the refusal.

19   The agency is then required to notify the individual of the provisions for judicial review of the

20   reviewing official's determination. *Id.* § 552a(d)(3).

21   Once a determination under Section 552a(d)(3) has been made not to amend the individual's

22   record or the agency fails to make a review in conformity with sub-section (d)(3), the individual may

23   bring a civil action against the agency in the district courts of the United States. *Id.* § 552a(g)(1).

24   In any suit brought under this provision, a court may order the agency to amend the records in

25   accordance with the request or as directed by the court, and the court may assess against the United

26   States reasonable attorney fees and other litigation costs incurred by a complainant who has

27   "substantially prevailed." *Id.* § 552a(g)(2)(A)-(B).

28

### 2.    Access Claims

Category B claims are access claims. *Id.* § 552a(g)(1)(B).  Upon request by an individual to gain access to his record or to information pertaining to him contained in the system, the agency must permit him to review the record and have a copy made of all or any portion. *Id.* § 552a(d)(1). If an agency refuses to comply with an individual's request under subsection (d)(1) for access to the records, the individual may bring a civil suit against the agency in a U.S. district court. *Id.* at § 552a(g)(1)(B).  As to the available remedies for a substantially prevailing individual, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld and may assess reasonable attorney fees and other litigation costs. To properly allege an access claim, a plaintiff must show (1) a request for records was made; (2) the request was denied; and (3) such denial or failure to act was improper under the Privacy Act. *Id.* at §§ 552a(d)(1), (g)(1)(B), (g)(3)(A)

### 3.    Maintenance Claims

Category C claims are maintenance claims. *Id.* at § 552a(g)(1)(C).  A maintenance claim accrues when an agency fails to maintain any record concerning an individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, which results in an adverse determination to the individual. Where a court determines that an agency acted in an intentional or a willful manner, the United States shall be liable for actual damages sustained as a result of the refusal or failure, but not less than $1,000.  The individual may also be awarded the costs of the action along with the reasonable attorney fees, as determined by the court. *Id.* at § 552a(g)(4)(A)-(B).

### 4.    Catch-all Claims

Category D claims are catch-all claims that accrue whenever an agency intentionally and willfully fails to comply with any other provision of the section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual causing actual damages.  As a remedy for such a violation, an individual is entitled to actual damages arising from the agency's refusal or failure, but in any event, not less than $1,000, along with the costs of the action and the reasonable

attorney's fees. *Id.* at § 552a(g)(4)(A)-(B).  As with a maintenance claim, to state a catch-all claim under subsection (g)(1)(D), a plaintiff must establish: (1) a violation of a Privacy Act provision; (2) that the agency's decision was intentional or willful; (3) that the violation caused "adverse effects"; and (4) that the plaintiff suffered actual damages. *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (citing *Albright v. United States*, 732 F.2d 181, 184 (D.C. Cir. 1984)).

### 5.     Plaintiff's Privacy Act Claims

Plaintiff's first three causes of action are category D catch-all claims for DHS' purported violations of subsections (e)(6), (e)(9), and (e)(10).  Plaintiff's fourth cause of action seeks the imposition of criminal penalties against agency officials or employees as provided in Section 552a(i)(1).  Plaintiff's fifth cause of action is a Privacy Act amendment claim, seeking declaratory and injunctive relief ordering DHS to amend Plaintiff's immigration records and remove the immigration detainer.  Plaintiff's sixth cause of action seeks damages for his category D catch-all claims.  Plaintiff's seventh cause of action is one for intentional infliction of emotional distress.

### B.     Administrative Exhaustion under the Privacy Act

Defendant asserts that Plaintiff's fifth and sixth causes of action are brought pursuant to 5 U.S.C. § 552a(g)(1)(A), but the Court lacks subject matter jurisdiction over these claims because Plaintiff has failed to exhaust his administrative remedies, which is jurisdictional.  (Doc. 20, 11:26-12:5.)  Defendant maintains that claims for record amendment pursuant to Section 552a(g)(1)(A) must be exhausted by first requesting that the agency amend the record and then seeking administrative appeal to the extent any request for amendment is refused.  Defendant asserts that Plaintiff has failed to send anything to the Privacy Act office, failing "even to initiate the procedure." (Doc. 20, 12:15.)

### 1.     Plaintiff's Fifth Cause of Action

Plaintiff's fifth cause of action appears to state an amendment claim pursuant to 552a(g)(1)(A) seeking the remedies provided for such a claim under Section 552(g)(2)(A) and (B), i.e., injunctive relief ordering ICE to correct Plaintiff's records to reflect that he is not subject to deportation and to rescind the immigration detainer.  Defendant contends that an amendment claim is subject to administrative exhaustion, which Defendant also maintains is jurisdictional.

The right to file a civil suit seeking amendment of records under the Privacy Act is conditioned upon the plaintiff first seeking relief through the administrative procedures specified in the statute.   Specifically, the Privacy Act provides:

(d) **Access to records.** – Each agency that maintains a system of records shall –

. . .

(2)    permit the individual to request amendment of a record pertaining to him and –

(A)    not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and

(B)    promptly, either –

(i)    make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii)   inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

(3)    permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section.

"Whenever any agency makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."

*Id.* at § 552a(g)(1).

13

1    Defendant maintains that Plaintiff has failed to administratively exhaust these remedies prior

2    to filing suit and that the exhaustion requirements are jurisdictional pursuant to *Kursar v. TSA*,

3    581 F. Supp. 2d 7, 18 (D.D.C. 2008).   Plaintiff asserts that he has attempted to exhaust his

4    administrative remedies, but the agency has failed to review multiple requests pursuant to Section

5    552a(d)(2), and thus he is entitled to file suit as specified in 552a(g)(1) (whenever agency "fails to

6    make such review in conformity with [subsection (d)(3),] . . . the individual may bring a civil action

7    against the agency").

8              **a.    Privacy Act Administrative Remedies Are Not Jurisdictional**

9    "A statute that requires exhaustion of administrative remedies may limit the district court's

10   subject matter jurisdiction if the exhaustion statute is 'more than a codified requirement of

11   administrative exhaustion' and contains 'sweeping and direct' language that goes beyond a

12   requirement that only exhausted claims be brought." *McBride Cotton & Cattle Corp. v Veneman*,

13   290 F.3d 973, 978 (9th Cir. 2002) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)); *Anderson*

14   *v. Babbitt*, 230 F.3d 1158, 1162 (9th Cir. 2000)).   Nevertheless, a failure to exhaust does not deprive

15   a federal court of jurisdiction when the exhaustion statute is merely a codification of the exhaustion

16   requirement. *Veneman*, 290 F.3d at 978 (citing *Rumbles v. Hill*, 182 F.3d 1064, 1067 (9th Cir.

17   1999)).

18   For the proposition that the Privacy Act exhaustion requirements for amendment claims are

19   jurisdictional, Defendant cites a D.C. District Court decision.   District courts within the D.C. Circuit

20   have held that the exhaustion requirement for amendment claims under the Privacy Act is

21   jurisdictional. *See, e.g., Colon v. Executive Office for U.S. Attorneys*, No. Civ. A. 98-0180 (PLF),

22   1998 WL 695631, at *2 (D.D.C. Sept. 29, 1998).   For example, in *Kursar v. TSA*, the court found

23   that Section 552a(d)(3) provides administrative remedies and steps to seek amendment of an

24   agency's records. 581 F. Supp. 2d 7, 18 (D.D.C. 2008).   Thus, the court determined that the statute

25   stated in "clear and unequivocal terms" that the judiciary was barred from hearing the action until

26   the administrative agency arrived at a decision.   The court concluded that exhaustion of the

27   administrative remedies provided in Section 552a(d)(3) is a jurisdictional prerequisite to a district

28   court's review. *Id.*  Because plaintiff had not taken the proper steps to seek amendment of the

1  records through the agency as an initial matter, the court concluded it lacked subject-matter

2  jurisdiction, and dismissed the claim without prejudice. *Id*.

3      Other appellate and district courts have interpreted the statutory language differently from

4  *Kursar*, finding that the exhaustion requirements in the Privacy Act are not jurisdictional and fall

5  into a second category of exhaustion – jurisprudential exhaustion.  For example, in *Taylor v. U.S.*

6  *Treasury Department*, 127 F.3d 470 (5th Cir. 1997), the Fifth Circuit held the exhaustion

7  requirements under the Privacy Act to be non-jurisdictional.  The court found that

8      [t]he language in [Section 552a(d) and (g) does] not expressly require exhaustion of
    particular administrative remedies, and more specifically does not require a
9      requesting party to fashion the request in any particular way.  It plainly does not
    constitute the 'clear, unequivocal' manifestation of Congressional intent necessary to
10     render exhaustion of administrative remedies a jurisdictional prerequisite.

11 *Id*. at 476.  In *Duke v. United States*, a district court in the Eastern District of Pennsylvania likewise

12 concluded that the administrative remedies provided for in the Privacy Act are not jurisdictional.

13 305 F. Supp. 2d 478, 488 (E.D. Pa. 2004); *see also Hammie v. Soc. Sec. Admin.*, 765 F. Supp. 1224,

14 1225 (E.D. Pa. 1991) (exhaustion "has been imposed by the courts as a general principle of

15 administrative law"); *Schaeuble v. Reno*, 87 F. Supp. 2d 383, 387 (D.N.J. 2000); *Anderson v. United*

16 *States Postal Serv.*, 7 F. Supp. 2d 583, 586 n. 3 (E.D. Pa. 1998).[8]

17     While the Ninth Circuit has not expressly addressed whether the administrative remedies

18 provided in the Privacy Act are a jurisdictional prerequisite to filing an amendment claim pursuant

19 to Section 552a(g)(1)(A), it has considered the jurisdictional nature of exhaustion statutes in other

20 contexts.  In *Veneman*, the Ninth Circuit noted that it has "rarely found exhaustion statutes to be a

21 jurisdictional bar."  In *Anderson v. Babbitt*, for example, the court reviewed the exhaustion

22 requirements under 43 C.F.R. § 4.21(c), which states that "[n]o decision which at the time of its

23 rendition is subject to appeal to the Director on Appeals Board shall be considered final so as to be

24

25     [8] *See also Wadhwa v. Dep't of Veterans Affairs*, 342 F.App'x 860, 862-63 (3d Cir. 2009) (unpublished) (citing
*Taylor*, 127 F.3d at 475-76 and holding that even to the extent exhaustion of remedies is required for Privacy Act claims,
26 such exhaustion is not a jurisdictional prerequisite); *but see Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004)
(unpublished) (citing *Taylor*, 127 F.3d at 474 for the proposition that Privacy Act exhaustion *is* jurisdictional).  *Taylor*
27 unequivocally held that the Privacy Act exhaustion requirements are **_not_** jurisdictional, and *Williams*' reliance on *Taylor*
for the opposite proposition appears to be an error.  *See Phillips v. Suvalsky*, No. 06-406 (JMR/RLE), 2008 WL
28 5401659, at *10 n. 7 (D.Minn Dec. 22, 2008) (findings and recommendations adopted in full by district court, noting
the discrepancy in *Williams* with regard to its citation to *Taylor*).

agency action subject to judicial review under 5 U.S.C. § 704." The *Anderson* court held that this language was not the type of "sweeping and direct language" that divests the district court of jurisdiction. Similarly, in *Rumbles*, the court considered the Prison Litigation Reform Act ("PLRA") exhaustion requirement under 42 U.S.C. § 1997e(a), that requires as follows:

> (a)  Applicability of Administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

182 F.3d at 1066-67.[9]  The court determined the exhaustion requirement was not a jurisdictional prerequisite to suit under 42 U.S.C. § 1983 because the statute contained no sweeping and direct language barring federal court jurisdiction and merely provided that no action should be brought until available administrative remedies are exhausted.  *Id.* at 1067-68.  The court concluded that Section 1997e(a) "simply codifies the administrative exhaustion doctrine that is 'one among related doctrines – including abstention, finality, and ripeness – that govern the *timing* of federal-court decisionmaking.'"  *Rumbles*, 182 F.3d at 1068 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

The *Veneman* court contrasted other decisions holding the failure to exhaust was a bar to federal subject-matter jurisdiction.  For example, in *Henderson v. Bank of New England*, 986 F.2d 319 (9th Cir. 1993), the court examined the administrative review process provided in 12 U.S.C. § 1821(d)(3)-(10) and the limitation on further judicial review imposed by Section 1821(d)(13)(D), which provides as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over-
>
> (i)  any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

---

[9] *Rumbles* was overruled by *Booth v. Churner*, 532 U.S. 731, 740-41 (2001) for the proposition that a prisoner who seeks money damages is not required to administratively exhaust his or her remedies.  The Supreme Court held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Id.* at 741.

(ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The *Henderson* court concluded that the administrative provisions of Section 1821(d)(13)(D) were jurisdictional because the statute expressly "strips all courts of jurisdiction over claims made outside the administrative procedures of section 1821 . . . ." *Henderson*, 986 F.2d at 320.

In *Gallo Cattle Co. v. United States Department of Agriculture*, 159 F.3d 1194 (9th Cir. 1998), the court considered the administrative appeals process and exhaustion requirements of 7 U.S.C. § 4509. That section provides as follows:

(a)    Any person subject to any order issued under this subchapter may file with the Secretary a petition stating that any such order or any provision of such order or any obligation imposed in connection therewith is not in accordance with law and requesting a modification thereof or an exemption therefrom. The petitioner shall thereupon be given an opportunity for a hearing on the petition, in accordance with regulations issued by the Secretary. After such hearing, the Secretary shall make a ruling on the petition, which shall be final if in accordance with law.

(b)    The district courts of the United States in any district in which such person is an inhabitant or carries on business are hereby vested with jurisdiction to review such ruling, if a complaint for that purpose is filed within twenty days from the date of the entry of such ruling.

7 U.S.C. § 4509. The court concluded that the exhaustion requirement was jurisdictional because it explicitly granted the district court jurisdiction over only those claims which had previously been presented to the Secretary by administrative petition. *Veneman*, 290 F.3d at 979-80 (discussing *Gallo Cattle*, 159 F.3d at 1197-98). In considering these decisions, the *Veneman* court compared the statutory language of 7 U.S.C. § 6912(e) at issue before it:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against -

(1)    the Secretary;
(2)    the Department; or
(3)    an agency, office, officer, or employee of the Department.

In comparing this statutory language to the exhaustion requirements in *Anderson*, *Rumbles*, *Henderson*, and *Gallo Cattle*, the *Veneman* court concluded that the administrative remedies provided in Section 6912(e) are not jurisdictional. The court explained that nothing in Section

1   6912(e) mentions, defines, or limits federal jurisdiction.  Further, the language requiring a person

2   to exhaust all administrative appeal procedures before an action may be brought in court was similar

3   to the language in *Anderson* and *Rumbles*, which the courts held was merely a codification of the

4   exhaustion requirement.  *Veneman*, 290 F.3d at 980.

5        Here, although the Privacy Act does provide detailed exhaustion requirements for amendment

6   claims brought pursuant to 552a(g)(1)(A), the language of the statute is more like that contained in

7   *Anderson*, *Rumbles*, and *Veneman* than the language the Ninth Circuit found to be jurisdictional in

8   *Henderson* and *Gallo Cattle.*  For example, in *Veneman*, although the statute specifically predicated

9   bringing an action in court on exhaustion of "all administrative appeal procedures," the statute did

10  not define or limit federal court jurisdiction.   The Privacy Act conditions suit under Section

11  552a(g)(1)(A) on an agency making a determination under subsection (d)(3) (whether to amend the

12  records), but it does not unequivocally limit the federal court's subject-matter jurisdiction in the

13  absence of such an agency determination or predicate jurisdiction on it.   While the Privacy Act

14  expressly vests federal district courts with jurisdiction over all civil Privacy Act claims brought

15  under subsection 552a(g)(1), it does not expressly limit or define federal court jurisdiction relative

16  to exhaustion of administrative remedies.   In *Gallo Cattle,* the exhaustion requirement in 7 U.S.C.

17  § 4509 was held to be jurisdictional because it explicitly granted the district court jurisdiction over

18  only those claims which had previously been presented to the Secretary by administrative petition.

19  Here, the statute only states that whenever any agency makes a determination under subsection (d)(3)

20  of this section, then an individual may bring a civil action against the agency.  For these reasons, the

21  Court finds persuasive the Fifth Circuit's interpretation of the Privacy Act's exhaustion requirements

22  as non-jurisdictional.

23        **b.     Plaintiff Has Not Properly Exhausted his Administrative Remedies**

24             **(i)     The Parties' Arguments**

25        Defendant contends that the required DHS administrative procedure for record amendment

26  requires that a Privacy Act request "be sent or delivered to the component's Privacy Act office at the

27  address listed in appendix A to this part.  In most cases, a component's central Privacy Act office is

28

18

the place to send a Privacy Act request." 6 C.F.R. § 5.21(a). If the agency refuses to amend the records, an individual requesting amendment must seek administrative appellate review.

Defendant submits the declaration of Ryan Law, the "Deputy FOIA Officer of the Freedom of Information Act Office" at ICE. (Doc. 19-1, Law Decl., ¶ 1.) Mr. Law maintains that Plaintiff's January 17, 2012, amendment request letter was addressed to an ICE Enforcement and Removal Operations at the Oakdale Processing Center located at 1010 East Whatley Road, Oakdale, LA, 71463. (Doc. 19-1, Law Decl., ¶ 6.) He also states that Plaintiff's February 2, 2012, letter was sent to the LaSalle Detention Facility, located at 830 Pinehill Road, Jena, LA, 71342. (Doc. 19-1, Law Decl., ¶ 6.) Finally, Plaintiff's March 13, 2012, letter was addressed to an ICE office located at 800 Truxton Avenue, Suite 109, Bakersfield, CA, 93301. (Doc. 19-1, Law Decl., ¶ 6.) ICE's Privacy Act Office in Washington, D.C., has no record of any amendment request from Plaintiff. (Doc. 30, 2:25-3:4:20, Doc. 19-1, Law Decl., ¶ 8.) Defendant maintains that Plaintiff failed to send anything to the DHS privacy office, and thus failed to initiate any administrative review of his claim. (Doc. 19, 7:5:18; Doc. 19-1, Law Decl., ¶¶ 4-7.)

Plaintiff counters that he submitted several requests for record amendment to various ICE field offices, which is sufficient under DHS' regulations to initiate administrative review of his claim, but DHS has failed to respond to his requests. Plaintiff argues that 6 C.F.R. § 5.26(a) "makes it abundantly clear" that for records held by a field office, an individual seeking amendment of administrative records must write directly to the field office. (Oppo., Doc. 24, p. 11-12.) Plaintiff also notes that ACCC's Warden informed Plaintiff's attorney by letter that ICE had issued an immigration detainer as to Plaintiff, and that Plaintiff's request "can certainly be more thoroughly addressed by contacting [ICE] directly. Accurate contact information is provided below for your reference: Jena ICE Office, Attention: Special Agent in Charge, 830 Pinehill Road, Jena, LA, 71342."

Plaintiff argues that Jena, Louisiana, is the location of a field office where his records are kept, and that ACCC's Warden specifically instructed his attorney to direct any inquiries to that office. Thus, Plaintiff contends his requests for amendment were properly sent to a field office located at 1010 East Whatley Road, Oakdale, LA 71463 on January 17, 2012, and a field office in

1   Jena, Louisiana, on February 2, 2012, but no response from those offices was ever received.  Plaintiff

2   also argues that he submitted record amendment requests to a field office located in Bakersfield,

3   California.  (Doc. 24, p. 20-21.)

4           In its reply brief, Defendant contends that none of the offices identified by Plaintiff is an ICE

5   field office and thus no record amendment request sent to those facilities would satisfy the statute's

6   exhaustion requirements.  (Doc. 30, 3:1-22.)[10]  Defendant asserts that if "Plaintiff's random letters

7   to peripheral locations that are not officially-recognized field offices [are] accepted as Privacy Act

8   exhaustion, [this] would plunge orderly Privacy Act administration into chaos."  (Doc. 30, 3:11-13.)

9           In his counter-declaration in sur-reply, Plaintiff argues that he has no resources available to

10  him that show that the ICE office to which ACCC's Warden directed his attorney is *not* a field office.

11  Further, in his request for judicial notice, Plaintiff notes that the "Notice to Appear" issued by DHS

12  for his removal proceedings was signed by a Field Agent located in Jena, Louisiana.  Plaintiff asserts

13  that this is evidence that Jena, Louisiana, does in fact have a field office.

14                          **(ii)    Analysis**

15          Section 5.26(a) of title 6 of the Code of Federal Regulations provides the following with

16  respect to requests for amendment or correction of records:

17          (a)     How made and addressed.  Unless the record is not subject to amendment or
            correction as stated in paragraph (f) of this section, you may make a request for
18          amendment or correction of a record of the Department about you by writing directly
            to the Department component that maintains the record, following the procedures in
19          § 5.21 . . . .

20  In turn, 6 C.F.R. § 5.21(a) provides the following in relevant part:

21          (a)     How made and addressed.  You may make a request for access to a
            Department of Homeland Security record about yourself by appearing in
22          person or by writing directly to the Department component that maintains the
            record.  Your request should be sent or delivered to the component's Privacy
23          Act office at the address listed in appendix A to this part.  In most cases, a
            component's central Privacy Act office is the place to send a Privacy Act
24          request.  For records held by a field office of the U.S. Customs Service, U.S.
            Secret Service, U.S. Coast Guard, or any other Department component with
25          field offices, however, you must write directly to that Customs, Secret
            Service, Coast Guard, or other field office address, which can be found in
26          most telephone books or by calling the component's central Privacy Act

27  ───────────────

28      [10] Notably, Defendant does *not* assert that sending a request to an ICE field office would not be sufficient to
    initiate a Privacy Act record amendment request under 6 C.F.R. § 5.21(a).

office . . . If you cannot determine where within the Department to send your request, you may send it to the Departmental Disclosure Officer, Department of Homeland Security, Washington, D.C., 20528, and that office will forward it to the component(s) it believes most likely to have the records that you seek . . . .

There is no dispute that Plaintiff failed to send any request to ICE's central Privacy Act Office in Washington, D.C.  Instead, Plaintiff contends that he addressed his requests to ICE field offices that never responded.

According to ICE's website, ICE has 24 field offices, including one located at 1250 Poydras, Suite 325, New Orleans, LA, 70113, whose area of responsibility includes Alabama, Arkansas, Louisiana, Mississippi, and Tennessee.  Plaintiff's January 17, 2012, letter was sent to an address for an ICE Enforcement and Removal Operations (ERO) facility at the Oakdale Processing Center, located at 1010 East Whatley Road, Oakdale, LA 71463.  (Doc. 19-1, Law Decl., ¶ 6.)  Plaintiff's February 2, 2012, letter was sent to an address for the LaSalle Detention Facility located at 830 Pine Hill Road in Jena, Louisiana, not a field office identified by ICE.  (Doc. 19-1, Law Decl., ¶6).[11] Plaintiff's March 13, 2012, letter was sent to an address for an ICE office located at 800 Truxton Avenue, Suite 109, Bakersfield, California, 93301.  To the extent that ICE field office locations are appropriate places to submit a Privacy Act amendment request pursuant to 6 C.F.R. 5.21(a), none of the addresses where Plaintiff sent his letters was actually an ICE field office.  Plaintiff contends that the Notice to Appear signed by John Hartnett, an Assistant Field Office Director, located in Jena, Louisiana, proves that there is an ICE field office in Jena, Louisiana.  However, while an Assistant Field Office Director appears to have signed a Notice to Appear in Jena, Louisiana, this does not establish that any facility located in Jena, Louisiana, is actually a field office.

Failure to comply with DHS' regulations regarding where to send a Privacy Act request fails to satisfy the exhaustion requirements of the statute.  *See Sterrett v. Dep't of Navy*, No. 09-cv-2083-IEG (POR), 2010 WL 330086, at * 4 (S.D. Cal. Jan. 20, 2010) (failing to mail the Privacy Act request to the person listed in the regulation deemed failure to exhaust administrative remedies); *Bettwieser v. Lucas*, No. 06-CIV-0142-WFN,  2007 WL 2187057, at *3 (dismissing a Privacy Act

---

[11] *See also* http://www.ice.gov/doclib/dro/facilities/pdf/jenadla.pdf.

claim for failure to exhaust where the plaintiff submitted an appeal to the manager of Labor Relations of local USPS, instead of the General Counsel in Washington, D.C., as required by the USPS regulations); *Smith v. Reno*, No. C-93-1316-VRW, 1996 WL 224994, at *3 (N.D. Cal. Apr. 23, 1996) (plaintiff failed to exhaust where she attempted to obtain records from the Department of Housing and Urban Development ("HUD") by sending a request to the National Records Administration instead of a HUD information center as required by 24 C.F.R. § 15.41(a)).

As it pertains to Plaintiff's counsel's letter to the ACCC Warden on December 2, 2011, and copies of the March 13, 2012, communication sent to Oakdale, Louisiana, the U.S. Attorney's Office in Fresno, California, and his attorney in Fresno, California, none of these locations is an ICE field office, ICE's main Privacy Act office, or ICE's Department Disclosure Officer in Washington, D.C. Further, any requests for record amendment Plaintiff may have sent after April 2, 2012, would have been sent *after* the complaint was filed.  (*See* Oppo., Doc. 24, p. 15-16.)  As Plaintiff failed to properly initiate the administrative review process *prior to* filing his complaint, he has failed to exhaust the available administrative remedies.

### c.     The Exhaustion Requirements Should Not Be Waived

Where administrative remedies are not jurisdictional, district courts have the discretion to require exhaustion after balancing the interests of the agency in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient independent administrative system, against the interests of private parties in finding adequate redress.  *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987).  "The district court may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review."  *Id.*

Plaintiff provides a number of reasons why he should be excused from any exhaustion requirements.  Plaintiff argues that he is only required to exhaust administrative remedies when the agency responds to his request. (Doc. 24, p. 8-10.)  Plaintiff cites *Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (per curiam) for the proposition that exhaustion of remedies is complete where the agency has an obligation to respond by a particular date but fails to do so.  While *Sergent* involved exhaustion requirements under the PLRA, Plaintiff asserts that the Privacy Act must

1  function similarly and permit an action for amendment of records to proceed where DHS has failed

2  to respond to the request.  (Doc. 24, p. 9.)

3      The Privacy Act does permit an individual to initiate suit where the agency fails to timely

4  review a request for record amendment.  5 U.S.C. § 552a(g)(1)(A) ("[w]henever any agency makes

5  a determination under subsection (d)(3) of this section not to amend an individual's record . . , or

6  fails to make such review in conformity with that subsection . . . the individual may bring a civil

7  action against the agency . . . ").  As discussed above, however, Plaintiff has failed to properly

8  initiate the procedure for administrative consideration of his amendment request.  As such, the

9  agency has not failed to respond to a properly submitted request.  Under these circumstances,

10  Plaintiff's excuse for his failure to exhaust is unavailing.

11     Plaintiff also asserts that there is no obligation to exhaust where the remedies are plainly

12  futile.  (Oppo., Doc. 24, p. 9.)  As it pertains to Privacy Act claims against DHS, however, the

13  administrative remedies are *not* futile.  DHS, through its component ICE, has the ability to address

14  Plaintiff's amendment request, and there is a procedure for seeking amendment through the

15  provisions of the Privacy Act.

16     Plaintiff argues that he only had the information that the ACCC Warden provided to his

17  counsel as to the Jena, Louisiana, facility and had no internet access to verify what addresses were

18  actually field offices.  (Singh Decl., Doc. 31, p. 2-3.)  Title 6 of the Code of Federal Regulations,

19  section 5.21(a) specifically instructs that if an individual is unable to determine "where within the

20  Department to send your request, you may send it to the Department Disclosure Officer, Department

21  of Homeland Security, Washington, DC 20528."  6 C.F.R. § 5.21(a).  To the extent Plaintiff asserts

22  he had no resources to verify the addresses of ICE field offices, his opposition reveals he had access

23  to a copy of 6.C.F.R. § 5.21(a) and could have sent his request to the Department Disclosure Officer,

24  as noted by the regulation.  Plaintiff's arguments that he relied on ACCC's Warden's instruction to

25  Plaintiff's counsel to direct questions about the immigration detainer to the Jean, Louisiana, facility

26  or that he had an inability to obtain the necessary information to correctly submit his request is

27  similarly unpersuasive because Plaintiff had a copy of the regulations (as the text of the 6 C.F.R.

28

23

§ 5.21(a) and 5.26 are quoted in Plaintiff's briefs), and could have sent his request as directed therein to the Department Disclosure Officer.

Finally, the interests of the agency clearly outweigh Plaintiff's interests. The Privacy Act administrative remedies are not onerous or extensive. Once Plaintiff properly initiates his request for record amendment by mailing his request to ICE's main privacy office, ICE is required to "not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt" and either make any correction requested or inform the individual of the refusal to amend the record in accordance with the request, the reason for the refusal, the procedures to request review of the refusal, and the name and business address of the official who will conduct the review. 5 U.S.C. § 552a(d)(2)(A)-(B). If Plaintiff's record amendment request is denied and he seeks review of that denial, the agency will review the denial within 30 days after Plaintiff seeks review. *Id*. § 552a(d)(3). If the reviewing official also refuses to amend the record in accordance with the request, Plaintiff may file with the agency a statement of his disagreement with that decision, and he will be notified of the provisions for judicial review and the administrative remedies will be exhausted. *Id.* Thus, the time-frame for responding to a record amendment request is short, and the process is not expensive or unduly burdensome. Given the agency's interests in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient independent administrative system, and the fairly light burden of administrative exhaustion on Plaintiff, it is appropriate to require Plaintiff to administratively exhaust his claims prior to filing suit. *See generally Hewitt v. Grabicki*, 794 F.2d 1373 (9th Cir. 1986) (affirming dismissal of Privacy Act amendment claim where no efforts to exhaust had been made).

### d.   Plaintiff's Exhaustion Attempts After Filing His Complaint

In Plaintiff's reply to Defendant's opposition to Plaintiff's motion seeking leave to file a counter-declaration in sur-reply, Plaintiff attached a certified mail receipt indicating that he has mailed a Privacy Act amendment request to the ICE New Orleans Field Office, which was delivered on January 28, 2013. (Doc. 33, p. 10.) Exhaustion, however, is required by the statute *prior* to filing a claim for record amendment under Section 552a(g)(1)(A). Exhausting remedies during the

pendency of the lawsuit does not serve the underlying policy objectives of exhaustion, including allowing the agency: (1) an opportunity to exercise its discretion and lend its expertise to the matter; (2) to make a factual record to support its decision; and (3) correct any mistakes, obviating unnecessary judicial review.   Much like the PLRA exhaustion requirements, failure to exhaust remedies *prior* to filing suit results in dismissal without prejudice of unexhausted claims; if exhaustion of those claims occurs *after* the filing of the suit, the claims must be dismissed without prejudice to initiating a *new lawsuit* stating those claims.[12]   On its face, requiring the filing of a new lawsuit may appear inefficient, yet to achieve the policy objectives of the Privacy Act's exhaustion requirement, exhaustion must occur *before filing suit*, not simply at a time prior to judgment.

For the reasons set forth above, Plaintiff's fifth cause of action for record amendment should be dismissed without prejudice to filing the claim in a new action if Plaintiff first exhausts his administrative remedies.

## 2.    Plaintiff's Sixth Cause of Action for Damages

Plaintiff's sixth cause of action purports to seek damages pursuant to 5 U.S.C. § 552a(g)(A)-(D).[13]   However, damages are not an available remedy for amendment and access claims under Section 552(a)(g)(A) and (B).[14]   Rather, damages are only an available remedy for maintenance and catch-all claims pursuant to 552a(g)(C) and (D) where the court finds that the agency acted in a manner which was intentional or willful, and the plaintiff suffered adverse effects.   A fair interpretation of the allegations in Plaintiff's sixth cause of action indicates Plaintiff is seeking

---

[12] *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *Vaden v. Summerhill*, 449 F.3d 1047 (9th Cir. 2006).  *Compare Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

[13] Although the heading to the Sixth Cause of action cites category A, B, C, and D claims, the allegations pled only relate to category D, catch-all claims pursuant to Section 552a(g)(1)(D).

[14] The remedies available for each type of Privacy Act claim are specified in subsections (g)(2)-(4).  For example, subsection (g)(2)(A) provides that for any suit brought under the provisions of subsection (g)(1)(A) [amendment claims], the court may order the agency to amend the individual's record.  5 U.S.C. § 552a(g)(2)(A). Further, the court may also assess reasonable attorney fees and other litigation costs reasonably incurred in any case under (g)(1)(A) where the complainant has "substantially prevailed."  5 U.S.C. § 552a(g)(2)(B).  In turn, subsection (g)(3) provides the remedies available for a suit brought under subsection (g)(1)(B) [access claims], and subsection (g)(4)(A)-(B) provides the remedies available for willful and intentional violations of subsection (g)(1)(C)-(D) [maintenance and catch-all claims].  The plain language of the statute does not provide for "mixing and matching" of remedies for each claim, it expressly outlines the remedies available for each type of claim under (g)(1)(A) through (D).

damages for his catch-all claims.  Plaintiff alleges the acts and omissions of ICE were intentional and willful breaches of section 552a(e)(6), (e)(9), and (e)(10).  (Doc. 1, ¶ 61.)  Plaintiff further alleges that

> 62.   As a direct, proximate and legal result of Defendants' willful and intentional dissemination of the aforesaid factual inaccuracies, Plaintiff and others has [sic] and continues to sustain general and special damages in an amount which is within the jurisdiction of the Court, not yet fully ascertained, but in an amount according to the proof at the time of trial.  Plaintiff will seek leave to amend this Complaint to state the true amount when fully and finally ascertained or according to proof at the time of trial.

> 63.   In intentionally and willfully disseminating the factual material inaccuracies, Defendants acted with oppression, fraud and malice, with malicious intent and with substantial certainty that such conduct would injure and damage Plaintiff.  The Defendants acts of willfully and intentionally, by failing to establish appropriate rules and safeguards, was malicious, oppressive, despicable, and in conscious disregard of the Plaintiff's rights, benefits and privileges and therefore Plaintiff is entitled to and requests the imposition of exemplary damages in a sum sufficient to punish and deter Defendants and in an amount when fully and finally ascertained or according to proof at the time of trial.

Plaintiff's allegation that Defendants willfully and intentionally disseminated factual inaccuracies tracks Plaintiff's catch-all claim under subsection (e)(6) which provides that, prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2), the agency must make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes. 5 U.S.C. § 552a(e)(6).  Further, Plaintiff's allegation that Defendants failed to establish appropriate rules and safeguards (Cmplt., Doc. 1, ¶ 63, quoted above) appears tied to Plaintiff's catch-all claim under subsection (e)(10) which provides that an agency must establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity.  5 U.S.C. § 552a(e)(10). Notably, Plaintiff cites to subsections (e)(6), (e)(9) and (e)(10).  (Cmplt., Doc. 1, ¶ 61.)

Plaintiff's sixth cause of action contains no allegations asserting a claim for record amendment, and there is no available damage remedy for amendment claims in any event.  Plaintiff's sixth cause of action simply seeks a remedy associated with his catch-all claims in the first, second, and third causes of action; it is not actually a claim for relief separate from his first three causes of

1    action. Furthermore, catch-all and maintenance claims seeking damages do not have any exhaustion

2    requirements, unlike amendment claims. *Hewitt*, 794 F.2d at 1379 ("Exhaustion of administrative

3    remedies is not a precondition to bringing an action for damages under the Privacy Act.").  For these

4    reasons, DHS' motion to dismiss Plaintiff's sixth cause of action for failure to exhaust his

5    administrative remedies should be DENIED.[15]

6    **C.    Administrative Exhaustion Required Under the Federal Tort Claims Act, 28 U.S.C. §**
     **2675(a)**

7

8    Plaintiff's seventh cause of action purports to state a claim for intentional infliction of

9    emotional distress against DHS.  (Cmplt., Doc. 1, ¶¶ 64-69.)  Plaintiff alleges that "Defendants,

10   intentionally and willfully, disseminated the material factual inaccuracies and intentionally and

11   willfully ignored Plaintiff's repeated requests to amend and correct the material factual inaccuracies."

12   (Cmplt., Doc. 1, ¶ 66.)  As a result of Defendants' "extreme, outrageous and unjustified" conduct,

13   Plaintiff has suffered "emotional distress causing chest pains and heart palpitations." (Cmplt., Doc.

14   1, ¶ 67.)

15   Defendant asserts that this claim sounds in tort, and the waiver of federal sovereign

16   immunity for tort claims is the Federal Tort Claims Act ("FTCA").  Defendant maintains that

17   Plaintiff has failed to file any administrative claim and thus his FTCA claim must be dismissed for

18   lack of subject-matter jurisdiction.   Although Plaintiff contends that he submitted a letter to the

19   Chief Counsel, Department of Homeland Security, the letter submitted does not relate to his claimed

20   personal injury, i.e., emotional distress, and cannot be construed as presenting the claim to the

21   appropriate federal agency.   (Oppo., Doc. 24, p. 22-23.)

22   Pursuant to 28 U.S.C. § 2401(b) (2013), a tort claimant is required to present his or her claim

23   against the United States to the appropriate federal agency within two years of the date it accrues.

24   *See also Staple v. United States*, 740 F.2d 766, 768 (9th Cir. 1984). The FTCA provides that:

25   An action shall not be instituted upon a claim against the United States for money
     damages . . . unless the claimant shall have first presented the claim to the
26   appropriate Federal agency and his claim shall have been finally denied by the agency
     in writing and sent by certificate or registered mail.  The failure of an agency to make

27

28
     [15] This claim is screened pursuant to 28 U.S.C. 1915A *infra*.

27

final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

The exhaustion requirement outlined under the FTCA is jurisdictional, and where a claimant fails to administratively exhaust as provided in Section 2675(a), the district court lacks jurisdiction over the FTCA claim. *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000). Further, a premature complaint cannot be cured by presenting an FTCA administrative claim to the agency after the suit has been filed. *McNeil*, 508 U.S. at 110-13.

Plaintiff bears the initial burden of establishing jurisdiction under the FTCA, *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) and exhaustion must be affirmatively alleged in the complaint, *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980). Plaintiff does not present any express allegation in the complaint or argument in his opposition that he has administratively exhausted his remedies under the FTCA and Defendant has provided affirmative evidence that neither DHS, nor its component ICE, has received an FTCA claim from Plaintiff. (Doc. 19-2, Brodsky Decl., ¶ 2.) Although Plaintiff argues that his claims are "predominately based on the Privacy Act," and he need only comply with the Privacy Act regulations, Plaintiff's FTCA claim is separate from his Privacy Act claims and carries its own exhaustion requirements which are jurisdictional. It is therefore recommended that Plaintiff's FTCA claim for emotional distress be dismissed without prejudice. Plaintiff may attempt to exhaust the administrative remedies, and if he does so, he may reassert this claim by filing a *new action*.

**D.      The PLRA Does Not Apply to Plaintiff's Privacy Act Claims Against DHS**

Defendant contends that the PLRA exhaustion requirements apply to Plaintiff's Privacy Act claims and require that Plaintiff exhaust administrative remedies before filing suit.   Defendant asserts that Plaintiff has failed to exhaust his administrative remedies under the PLRA with respect to his Privacy Act claims, and the claims must be dismissed without prejudice.

The PLRA amended 42 U.S.C. § 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  The PLRA defined the phrase "civil action brought with respect to prison conditions" as meaning "any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison," other than "habeas proceedings challenging the fact or duration of confinement in prison."  18 U.S.C. § 3626(g)(2).

Defendant argues that this is an action "with respect to prison conditions," and cites the Supreme Court's decision in *Porter v. Nussle* holding that the term "prison conditions" is interpreted broadly to encompass all suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  534 U.S. 516, 532 (2002).  Defendant also argues that Plaintiff's claims are brought pursuant to federal law, and the PLRA exhaustion requirement applies to actions brought under any federal law.  Defendant further contends that exhaustion of BOP's grievance procedures serves the statutory purposes of allowing correction officials the time and opportunity to address complaints internally before the initiation of a federal suit is allowed.  Failing to require exhaustion here would encourage artful pleading around the exhaustion requirements.

This suit is against DHS, and not BOP, for correction of records pertaining to an immigration detainer that was issued *outside* Plaintiff's prison; it is not a suit regarding the conditions of Plaintiff's confinement.  Plaintiff's fundamental claim is that ICE improperly issued an immigration detainer, a designation that affects him temporally and figuratively beyond his term of imprisonment, and it need not be exhausted administratively under the PLRA.

Further, BOP cannot address Plaintiff's request for amendment of his ICE records.  Thus, the statutory purposes of the PLRA are not served – even with time and the opportunity to address Plaintiff's complaint, BOP cannot remedy any issue with respect records maintained and held by ICE.  In fact, ACCC's Warden essentially advised Plaintiff's counsel of this and directed Plaintiff's counsel to contact an ICE facility in Jena, Louisiana.

Defendant argues that there are fifty Doe defendants listed in Plaintiff's complaint, and this suggests a tactical choice to preserve BOP as a future party.  Defendant asserts that Plaintiff appears to have an unstated grievance against BOP's designation of him to ACCC because BOP

1    independently applied its Alien PSF to Plaintiff and designated him to ACCC in July 2011, before

2    the December 2011 Immigration Detainer came into existence.

3            To the extent that Plaintiff were to file suit against BOP regarding his PSF designation and

4    its effect on his experience in prison (including his ineligibility for incarceration in a minimum

5    security facility and participation in RRC or RDAP programs), Plaintiff would be required to exhaust

6    any claims through the proper and available administrative channels.  It is worth noting, however,

7    that there is no cognizable Privacy Act claim against BOP with respect to Plaintiff's PSF designation,

8    as this is part of his Inmate Central File, which has been exempted by BOP from the Privacy Act

9    provisions.[16]  *See Speight v. Fed. Bureau of Prisons*, No. 07-0208(RCL), 2008 WL 3411660, at *2

10   (D.D.C. Aug. 11, 2008) ("[T]he Privacy Act's provision for civil action is not available for matters

11   arising from records in [the BOP's] Inmate Central Records system, and [plaintiff] has no right of

12   action with respect to those records."); *Clow v. Fed. Bureau of Prisons*, No. 08-1121(ESH), 2008

13   WL 2705193, at *2 (D.D.C. July 9, 2008) (determining that "plaintiff cannot, as a matter of law, seek

14   amendment of the [PSI and custody classification form] based on the BOP's alleged failure to

15   maintain accurate records" because these documents "are maintained in the Inmate Central Records

16   System"); *see also Marinez v. Fed. Bureau of Prisons*, 444 F.3d 620, 624 (D.C.Cir. 2006) (per

17   curiam) (affirming dismissal of Privacy Act claims against the BOP because it had exempted the

18   Inmate Central Records system from the accuracy provision of the Privacy Act, 5 U.S.C. §

19   552a(e)(5)).

20           Further, Defendant argues that all the claims should be required to be subject to the PLRA

21   so that they can proceed together and avoid "undesirable bifurcation." (Doc. 19, 16:14-19:8.)  The

22   basis for any suit against BOP will be factually distinct from Plaintiff's claims for record amendment

23   under the Privacy Act against DHS, particularly to the extent that DHS maintains Plaintiff's PSF

24   designation was in place prior to ICE's issuance of an immigration detainer and is not dependent

25

26   [16] The Privacy Act permits agencies such as the BOP to enact rules to exempt any system of records within the
     agency from certain provisions of the Act, including section 552a(e)(5).  Pursuant to Section 552a(j), the BOP has
27   exempted various systems of records from certain provisions of the Privacy Act, including its Inmate Central Record
     System. An Inmate Central File contains, among other things, an inmate's pre-sentence investigation report ("PSI"), his
28   custody classification form, and his security designation form. *See* P.S. 5800.11, Inmate Central File, Privacy Folder
     (12/31/1997) ¶¶ 8-9.

1  upon the immigration detainer.  It is not clear that any suit against BOP would be necessarily or

2  properly joined with Plaintiff's suit against ICE under the Privacy Act.

3      For all these reasons, the Court recommends that Defendant's motion to dismiss Plaintiff's

4  first, second, third, fourth, and sixth causes of action for failure to exhaust administrative remedies

5  under the PLRA be DENIED.

6  **E.     Sua Sponte Screening of Plaintiff's Remaining Claims**

7      For the reasons set forth above, Defendant's motion to dismiss with respect to Plaintiff's

8  Privacy Act claim for record amendment (fifth cause of action) and his FTCA claim (seventh cause

9  of action) should be granted, and those claims should be dismissed without prejudice.  Defendant's

10  motion to dismiss Plaintiff's first, second, third, fourth, and sixth causes of action for failure to

11  exhaust administrative remedies under the PLRA should be denied.  Although Defendant did not

12  seek dismissal of any claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

13  claim, the Court is required by 28 U.S.C. § 1915A to sua sponte screen a prisoner's complaint against

14  a governmental entity to determine whether the complaint states cognizable claims upon which relief

15  may be granted.  Thus, although Defendant has not addressed the cognizability of Plaintiff's claims

16  under Rule 12(b)(6), a review of the remaining causes of action is set forth below.

17  **1.     Legal Standard**

18      Title 28 of the United States Code, Section 1915A provides that "[t]he court shall review,

19  before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in

20  a civil action in which a prisoner seeks redress from a governmental entity or officer or employee

21  of a governmental entity." 28 U.S.C. § 1915A(a).  "On review, the court shall identify cognizable

22  claims or dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous,

23  malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

24  from a defendant who is immune from such relief."  *Id*. at § 1915A(b)(1)-(2).

25      In determining whether a complaint fails to state a claim, the Court uses the same pleading

26  standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must

27  contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

28  R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (quoting *Twombly*, 550 U.S. at 555).

### 2.    Plaintiff's Privacy Act Catch-All Claims for Damages

Although Plaintiff's catch-all claims do not carry any exhaustion requirements, whether these causes of action state a claim upon which relief can be granted is considered below.

### a.    Plaintiff's First Cause of Action Pursuant to Subsection (e)(6)

Plaintiff's first cause of action purports to state a catch-all claim under 5 U.S.C. § 552a(g)(1)(D) for DHS' violation of subsection (e)(6). Subsection (e)(6) requires that each agency that maintains a system of records shall "prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." 5 U.S.C. § 552a(e)(6).

Plaintiff asserts that at numerous times during the course of the criminal proceedings against him, he was assured that he was non-deportable, apparently as a result of his plea agreement. (Cmplt., Doc. 1,  ¶ 10.)  Plaintiff alleges that DHS disseminated unreliable, inaccurate, and incomplete material indicating that an "investigation had been initiated to determine whether [Plaintiff] is subject to removal from the United States." Plaintiff contends that this investigation triggered BOP to categorize Plaintiff with a PSF for deportable aliens. (Cmplt.,, Doc. 1, ¶ ¶ 13, 15.)

 Plaintiff's alleges that DHS disseminated false information about his deportation status to BOP, triggering BOP to categorize him with a PSF for deportable aliens.  The text of subsection

(e)(6), however, is expressly limited only to disseminations "to any person *other than an agency.*" "The statutory language [of subsection (e)(6)] makes clear that this provision does not apply when information is disclosed within the agency or to another agency." *Thompson*, 400 F. Supp. 2d at 21-22 (citing OMB Guidelines, 40 F.3dReg. at 28, 965 ("[A]ny record disclosed to a person outside the agency (except another agency) must be as accurate as appropriate for purposes of the agency which maintained the record.")).  Plaintiff fails to allege how DHS disseminated information to a person *other than an agency*, such that DHS could be found to have violated subsection (e)(6).

> **b.     Plaintiff's Second and Third Causes of Action Under Subsections (e)(9) and (e)(10)**

Plaintiff's second and third causes of action attempt to state catch-all claims pursuant to subsections (e)(9) and (e)(10) of the Privacy Act.  Subsections (e)(9) and (e)(10) deal with an agency's obligations to establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records and to establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records.  5 U.S.C. § 552a(e)(9), (e)(10).  "To successfully state a claim under these subsections, plaintiff must identify a 'rule or safeguard . . . that [DHS] should have established but did not.'"  *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (quoting *Chambers v. U.S Dep't of Interior*, 568 F.3d 998, 1007 n. 7 (D.C. Cir. 2009) (holding that the plaintiff could not sue under (e)(9) or (e)(10) when merely alleging that the agency had failed to "safeguard and maintain records."))

Plaintiff alleges in conclusory fashion that "Defendants failed to establish rules of conduct for persons involved in the design, development, operation, or maintenance of the said system of records, or in maintaining any records."  (Doc. 1, ¶ 36.)  Plaintiff further alleges that "Defendants failed to instruct each such person with respect to such rules and the requirements of the mandated accuracy and disclosure requirements," and "failed to instruct each such person [on] the penalties for non-compliance."  (Doc. 1, ¶¶ 37-38.)  This language merely tracks the statute and states a series of legal conclusions, rather than setting forth factual allegations.  While a complaint does not require detailed factual allegations, a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Twombly*, 550 U.S. at 555.  Plaintiff's

allegations are insufficient to state a claim under Rule 8.   Additionally, Plaintiff fails to allege how DHS' actions were intentional and willful and how it caused Plaintiff actual monetary damages.   For these reasons, Plaintiff's allegations are insufficient to state cognizable claims under subsections (e)(9) or (e)(10).

### c.      Plaintiff's Sixth Cause of Action for Damages

While courts frequently refer to maintenance and catch-all claims as "damage claims" because they are the only types of Section 552a(g)(1) Privacy Act claims that support a damage remedy, there is no "claim" for damages.   Rather, a claim for "damages" is a request for a particular remedy.   As discussed above, Plaintiff's sixth cause of action for "damages" seeks the remedy available for Plaintiff's catch-all claims under (g)(1)(D).   Thus, this is not a stand-alone claim, but a request for a remedy which must be interpreted in conjunction with Plaintiff's catch-all claims in the first three causes of action.   This claim should be dismissed with leave to amend as part of Plaintiff's first three causes of action.

### 3.      Plaintiff's Fourth Cause of Action for Criminal Penalties Pursuant to 5 U.S.C. § 552a(i)(1)

Plaintiff seeks the imposition of criminal penalties as provided in the Privacy Act in subsection 552a(i)(1)-(3).   However, this is a civil action, and there is no private right of action provided in the statute to seek criminal penalties under (i)(1)-(3).   *See Unt v. Aerospace Corp.*, 765 F.2d 1440, 1448 (9th Cir. 1985) ("This section provides for criminal penalties only, and generates no private civil right of action."); *cf. Fed. Lab. Rel. Authority v. U.S. Dep't of Defense*, 977 F.2d 545, 549 n.6 (11th Cir. 1992) (dicta noting that, "[a]s a penal provision, however, [subsection (i)] seems to provide no private right of action").   Plaintiff cannot maintain a civil action seeking the imposition of criminal penalties pursuant to the statute.   Because any amendment is futile in the absence of a private right of action, this claim should be dismissed with prejudice and without leave to amend.

///

///

///

## IV.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that:

1.     Defendant's motion to dismiss Plaintiff's fifth cause of action for failure to exhaust administrative remedies be GRANTED and the cause of action should be DISMISSED without prejudice to filing a new action following exhaustion;

2.     Defendant's motion to dismiss Plaintiff's sixth cause of action for failure to exhaust administrative remedies under the Privacy Act be DENIED;

3.     Defendant's motion to dismiss Plaintiff's first, second, third, fourth, and sixth causes of action for failure to exhaust administrative remedies under the PLRA should be DENIED;

4.     Pursuant to sua sponte screening of Plaintiff's complaint under Section 1915A:

a.     Plaintiff's first, second, third, and sixth causes of action should be DISMISSED without prejudice and with leave to amend for failure to state a claim upon which relief may be granted; and

b.     Plaintiff's fourth cause of action should be DISMISSED with prejudice and without leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-eight (28) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    __April 18, 2013__                    _____/s/ Sheila K. Oberto_____
                                                       UNITED STATES MAGISTRATE JUDGE