1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JASDEV SINGH,

        Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

_____/

Case No.  1:12-cv-00498-AWI-SKO

**FINDINGS AND RECOMMENDATIONS
THAT DEFENDANT'S MOTION TO
DISMISS BE GRANTED**

**OBJECTIONS DUE:  28 DAYS**

(Doc. Nos. 39, 45)

## I.   INTRODUCTION

On April 2, 2012, Plaintiff Jasdev Singh ("Plaintiff") filed a complaint against the United States Department of Homeland Security ("Defendant" or "DHS") asserting claims pursuant to the Privacy Act, 5 U.S.C. § 552a.  (Doc. 1.)  Plaintiff is currently incarcerated at Adams County Correctional Complex ("ACCC") and is proceeding in this matter in propria persona.   On December 6, 2012, Defendant filed a motion to dismiss, or in the alternative, a motion for summary judgment.  (Docs. 19, 20.)  Defendant's motion was granted in part and denied in part;

1    Plaintiff was permitted to file an amended complaint as to his first, second, third, and sixth causes

2    of action.  (Doc. 37.)

3        On July 15, 2013, Plaintiff filed a First Amended Complaint ("FAC").  (Doc. 38.)  On

4    August 1, 2013, Defendant filed a motion to dismiss.  (Doc. 39.)  On September 16, 2013, Plaintiff

5    filed an opposition to Defendant's motion (Doc. 43), and on October 1, 2013, Defendant filed a

6    reply (Doc. 44).  On October 11, 2013, Plaintiff filed a motion for leave to file a sur-reply.  (Doc.

7    45.)

8                            **II.    BACKGROUND**

9    **A.    Factual Background**

10       Plaintiff's complaint arises out of criminal proceedings wherein Plaintiff ultimately pled

11   guilty to felony charges.   (FAC, Doc. 38, ¶ 10.)   Plaintiff is an alien who claims that, in

12   negotiating his plea agreement, and at other times during the course of the criminal proceedings

13   against him, it was represented to him by the Government, including an agent of the U.S.

14   Immigration and Customs Enforcement ("ICE"), that he would not be subject to deportation based

15   on his plea because he was granted asylum by the San Francisco Immigration Court on April 5,

16   2000. (FAC, ¶ 17.)  Plaintiff asserts this representation was made to sweep certain DEA informant

17   misconduct "under the rug."  (FAC, ¶ 17.)

18       In exchange for his agreement to plead guilty, the government negotiated his sentence of

19   incarceration, recommending that Plaintiff be (1) placed in a minimum security prison;

20   (2) permitted to participate in a Residential Drug Abuse Treatment Program ("RDAP")

21   (3) permitted to participate in a Residential Reentry Program ("RRC"); and (4) reunited at the

22   earliest possible time with his family.  (FAC, ¶ 11.)

23       Despite assurances of his non-deportable status, following Plaintiff's sentencing, an

24   immigration detainer was issued on December 7, 2011.  (FAC, ¶ 22.)  Plaintiff asserts that the

25   issuance of the immigration detainer caused the Federal Bureau of Prisons ("BOP") to categorize

26   Plaintiff with a Public Safety Factor ("PSF") for "deportable alien."[1]  (FAC, ¶ 20.)  Plaintiff was

27

28   [1]  A PSF is relevant factual information regarding the inmate's current offense, sentence, criminal history or
     institutional behavior that requires additional security measures be employed to ensure the safety and protection of the
     public.  PSFs are normally applied on the Inmate Load and Security Designation Form (BP-337) prior to an inmate's

1    also transferred to ACCC, a low security facility in Natchez, Mississippi, which Plaintiff contends

2    is considered an immigration hearing site and/or release site.  (FAC, ¶¶ 1, 21, 25.)

3         On December 2, 2011, Plaintiff's defense counsel contacted ACCC seeking to have BOP

4    transfer Plaintiff to a prison facility that was both closer to his family and that would allow him to

5    participate in the programs that had been recommended as part of his sentence.  (FAC, ¶ 25.)

6         On December 20, 2011, ACCC's Warden responded to Plaintiff's counsel, indicating that

7    ICE had placed a detainer on Plaintiff, and counsel should contact ICE to correct any discrepancy.

8    (FAC, ¶ 26.)

9         On February 13, 2013, DHS issued Plaintiff a Notice to Appear before an immigration

10   judge for removal proceedings under Section 240 of the Immigration and Nationality Act.  (FAC,

11   p. 29, Exhibit B.)  The Notice to Appear indicates that Plaintiff was convicted on July 18, 2011, in

12   the United States District Court for the Eastern District of California for the offense of Conspiracy

13   to Distribute and to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C.

14   §§ 841(a)(1), 841(b)(1)(A), and 846.  (FAC, p. 29, Exhibit B.)  The Notice to Appear was signed

15   by John Hartnett, Assistant Field Office Director.  (FAC, p. 29, Exhibit B.)

16        On February 21, 2013, Plaintiff sent a "Notice of Filing" to the Immigration Court, which

17   was also served on DHS's Chief Counsel's office and John Hartnett.  (FAC, ¶ 28.)   On February

18   27, 2013, the filing was rejected, indicating "Case Not Pending."  (FAC, ¶ 29.)

19        On February 25, 2013, Plaintiff filed with the Immigration Court a "Response Motion and

20   Declaration to Dismiss Notice to Appear and Motion to Submit Exhibit(s) to be Offered into

21

22   initial assignment to an institution; however, additions or deletions may be made at anytime there after via the
     Custody Classification Form, (BP-338).  BOP Program Statement ("P.S.") 5100.08, Chapter 5, p. 7.  The PSF for
23   "Deportable Alien" is defined as follows:

24         A male or female inmate who is not a citizen of the United States . . . The PSF shall not be applied,
           or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive
25         Office for Immigration Review (EOIR) have determined that deportation proceedings are
           unwarranted or there is a finding not to deport at the completion of deportation proceedings . . . .
26
     BOP P.S. 5100.08, Chapter 5, p. 8.  DHS represented in its first motion to dismiss that the PSF designation was in
27   place before the immigration detainer was issued, and Plaintiff was assigned to ACCC on July 27, 2011, pursuant to
     BOP policy.  (Doc. 19-4, Miller Decl., ¶ 5.)  Based on BOP's Program Statement PSF descriptions, it appears that a
28   PSF of "deportable alien" applies to any prisoner "who is not a citizen of the United States," regardless of whether
     ICE has issued an immigration detainer.

Evidence."  (FAC, ¶ 30.)  On March 4, 2013, the Clerk of the Immigration Court rejected the filing again stating "Case Not Pending."  (FAC, ¶ 30.)  On March 7, 2013, Plaintiff informed the Director of DHS in the Enforcement and Removal Operations division in New Orleans, Louisiana, that the Notice to Appear was improvidently issued.  (FAC, ¶ 31.)

On March 20, 2013, Plaintiff filed a "Motion to Terminate [Notice to Appear] and the Immigration Proceedings" with the Immigration Court.  (FAC, ¶ 32.)  That motion was denied on May 9, 2013, by the Immigration Court via an order that indicated any assurances given to Plaintiff by the prosecuting attorney in his criminal case do not affect the removal proceedings.  (FAC, ¶ 33.)

Plaintiff's FAC purports to state a catch-all claim pursuant to Section 552a(g)(1)(D) [first cause of action], an amendment claim pursuant to Section 552a(g)(1)(A)-(B) [second cause of action], and an accuracy/maintenance claim pursuant to Section 552a(g)(1)(C) [third cause of action].  He contends he was assured by the Government during his plea negotiations and sentencing that he would be deemed non-deportable following his conviction.  Despite these assurances, however, removal proceedings have been instituted against him, and he has been assigned a PSF designation by BOP which precludes his assignment to minimum security BOP facilities where the programs for which he was recommended in sentencing are available.  (FAC, ¶ 20.)

Plaintiff asserts that, pursuant to 6 C.F.R. § 5.34(e), Defendant must "maintain all records that are used by the Department in making any determination about an individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to ensure fairness to the individual in the determination."  Because Defendant failed to accurately report and maintain his file to reflect his promised non-deportable status, determinations "continue to be made which are adverse to Plaintiff."  (FAC, ¶ 38.)

**B.**   **Procedural Background**

Plaintiff filed his original complaint on April 2, 2012, stating, *inter alia*, a Privacy Act claim for record amendment pursuant to 5 U.S.C. § 552a(g)(1)(A) and a claim pursuant to the Federal Torts Claims Act ("FTCA").  Defendant filed a motion to dismiss, which was granted in

part and denied in part.  (Docs. 35, 37.)  The Court held that Plaintiff's Privacy Act amendment claim was subject to administrative exhaustion requirements that Plaintiff had failed to satisfy prior to filing suit.  While the failure to exhaust administrative remedies was deemed non-jurisdictional, the Court concluded Plaintiff had failed to meet, and there was no basis to waive, the exhaustion requirements.  Plaintiff's amendment claim was dismissed without prejudice to refiling the claim in a *separate* action if Plaintiff first exhausted his administrative remedies.  Plaintiff's claim pursuant to the FTCA was likewise deemed unexhausted and dismissed without prejudice to refiling in a separate action following administrative exhaustion.

The remainder of Plaintiff's Privacy Act claims were dismissed as non-cognizable, and Plaintiff was permitted leave to amend his "catch-all" claims pursuant to Section 552a(g)(1)(D).

### III.   DISCUSSION

**A.     Plaintiff's Request to File A Sur-Reply Should be DENIED**

On October 11, 2013, Plaintiff filed a request for "Leave to File a Sur-Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Dismissal and Summary Judgment." (Doc. 45.)  The request for leave to file a sur-reply substantively responds to Defendant's reply brief, and thus appears to be an actual sur-reply in addition to a request for leave to file a sur-reply.  There is no provision in the Court's Local Rules permitting Plaintiff to file a sur-reply.  To the extent Plaintiff's request for leave to file contains the sur-reply he wishes the Court to consider, his request should be DENIED and the sur-reply should be STRICKEN.  Further, to the extent that Plaintiff seeks leave to file an additional statement in sur-reply beyond the statement provided in his request for leave to file a sur-reply, that request should similarly be DENIED.

**B.     Privacy Act Claims – Overview**

Plaintiff's FAC sets forth three causes of action that purport to state claims under the Privacy Act, 5 U.S.C. § 552a.  The Privacy Act "regulate[s] the collection, maintenance, use, and dissemination of information by [federal] agencies" and provides a private cause of action against federal agencies for violating the Act's provisions.  *Doe v. Chao*, 540 U.S. 614, 618 (2004); 5 U.S.C. § 552a(g)(1) (explaining any individual may bring a civil action against the agency for violation of the Act).  The proper defendant in a Privacy Act action is an agency, not individual

1  employees. *Armstrong v. U.S. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997) (noting the

2  term agency "does not include individual officers or employees of an agency"); *Wheeler v.*

3  *Gilmore*, 998 F. Supp. 666, 668 (E.D. Va. 1998) (noting "an agency is the only proper defendant

4  under the Act and, therefore, individuals may not be named as defendants in such actions").

5       The Privacy Act allows individuals to make a written request for records maintained by

6  government agencies, *id.* § 552a(d), and compels the government to maintain accurate information

7  within those records, *id.* § 552a(e)(5).  When an agency fails to comply with the Act, the statute

8  provides civil remedies, places jurisdiction within the federal court, and authorizes the court to

9  order injunctive relief, actual damages, or attorney's fees, depending upon the circumstances. *Id.*

10  § 552a(g).

11       As set out below, there are different types of civil claims available to an individual under

12  the Privacy Act, based on the particular failure of the agency at issue. *Id.* § 552a(g)(1)(A)-(D).

13       **1.      Amendment Claims**

14       Category (A) claims are those seeking amendment of any agency's records.  Pursuant to

15  5 U.S.C. § 552a(d)(2), each agency that maintains a system of records shall permit an individual to

16  request amendment of a record pertaining to him.  *Id.*  The agency is required to acknowledge

17  such a request in writing within 10 days after the date of receipt of such a request.  The agency

18  may either make the requested correction or inform the individual of its refusal to amend the

19  record in accordance with the request, the reasons for the refusal, and the procedures available for

20  the individual to seek review of that refusal by the head of the agency or the officer designated by

21  the head of the agency.  *Id.* § 552a(d)(2)(A)-(B).

22       If the agency refuses to amend the record, an individual who disagrees with that

23  determination may request a review of the refusal, and the agency is required to review the refusal

24  within 30 days from the date on which the individual requests a review.  If the reviewing official

25  also refuses to amend the record in accordance with the request, the individual must be permitted

26  to file with the agency a concise statement setting forth his reasons for disagreement with the

27  refusal.  The agency is then required to notify the individual of the provisions for judicial review

28  of the reviewing official's determination.  *Id*. § 552a(d)(3).

1   Once a determination under Section 552a(d)(3) has been made not to amend the

2   individual's record or the agency fails to make a review in conformity with sub-section (d)(3), the

3   individual may bring a civil action against the agency in the district courts of the United States.

4   *Id*. § 552a(g)(1).  In any suit brought under this provision, a court may order the agency to amend

5   the records in accordance with the request or as directed by the court, and the court may assess

6   against the United States reasonable attorney fees and other litigation costs incurred by a

7   complainant who has "substantially prevailed."  *Id*. § 552a(g)(2)(A)-(B).

8       **2.      Access Claims**

9   Category B claims are access claims.  *Id*. § 552a(g)(1)(B).  Upon request by an individual

10  to gain access to his record or to information pertaining to him contained in the system, the agency

11  must permit him to review the record and have a copy made of all or any portion thereof.  *Id*.

12  § 552a(d)(1).  If an agency refuses to comply with an individual's request under subsection (d)(1)

13  for access to the records, the individual may bring a civil suit against the agency in a U.S. district

14  court.   *Id*. at §  552a(g)(1)(B).   As to the available remedies for a substantially prevailing

15  individual, the court may enjoin the agency from withholding the records and order the production

16  to the complainant of any agency records improperly withheld, and may assess reasonable attorney

17  fees and other litigation costs. To properly allege an access claim, a plaintiff must show (1) a

18  request for records was made; (2) the request was denied; and (3) such denial or failure to act was

19  improper under the Privacy Act.  *Id*. at §§ 552a(d)(1), (g)(1)(B), (g)(3)(A).

20      **3.      Accuracy/Maintenance Claims**

21  Category C claims are accuracy/maintenance claims.   *Id*. at §  552a(g)(1)(C).   A

22  maintenance claim accrues when an agency fails to maintain any record concerning an individual

23  with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in

24  any determination relating to the qualifications, character, rights, or opportunities of, or benefits to

25  the individual that may be made on the basis of such record, which results in an adverse

26  determination to the individual.  "[T]o state a claim under the accuracy provisions of the Privacy

27  Act, an individual must show 1) that the government failed to fulfill its record keeping obligation,

28  2) which failure proximately caused the adverse determination, 3) that the agency failed

intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages." *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009) (quoting *Rose*, 905 F.2d at 1259 (internal quotation marks omitted)).   Where a court determines that an agency acted in an intentional or a willful manner, the United States shall be liable for actual damages sustained as a result of the refusal or failure, but not less than $1,000.  The individual may also be awarded the costs of the action along with the reasonable attorney fees, as determined by the court.  *Id*. at § 552a(g)(4)(A)-(B).

### 4. **Catch-All Claims**

Category D claims are catch-all claims that accrue whenever an agency intentionally and willfully fails to comply with any other provision of the section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual causing actual damages. As a remedy for such a violation, an individual is entitled to actual damages arising from such refusal or failure, but in any event, not less than $1,000, along with the costs of the action and the reasonable attorney's fees.  *Id*. at § 552a(g)(4)(A)-(B).  As with a maintenance claim, to state a catch-all claim under subsection (g)(1)(D), a plaintiff must establish: (1) a violation of a Privacy Act provision; (2) that the agency's decision was intentional or willful; (3) that the violation caused "adverse effects"; and (4) that the plaintiff suffered actual damages.  *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (citing *Albright v. United States*, 732 F.2d 181, 184 (D.C. Cir. 1984)).

## C. **Legal Standard – Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *see* Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility," and thus survives a motion to dismiss, when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  On a Rule 12(b)(6) motion to dismiss, the court

accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).

A motion to dismiss for lack of subject matter jurisdiction may also be made pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege sufficient facts to establish jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

**D.    The Court Has No Subject Matter Jurisdiction to Grant Some of the Remedies Plaintiff Seeks**

Defendant contends that the gravamen of Plaintiff's claims is really a challenge to the Notice to Appear that was issued by DHS for a removal proceeding. Pursuant to 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because the FAC challenges the decision to commence removal proceedings, 8 U.S.C. §1252(g) specifically strips the district court of jurisdiction over those claims. (Doc. 39, 11:3-12:28.)

Plaintiff argues that he has not raised a challenge to Defendant's decision to commence removal proceedings against him or the merits of that adjudication, but rather seeks to include information regarding the promises made to him during the course of his plea and sentencing so that this information may be considered during the course of removal proceedings. However, that

information has not been included in his file; as such, it cannot be adequately considered during the removal proceedings.  (Doc. 43, p. 38-39.)  Plaintiff asserts that, even if he prevails on his Privacy Act claims, he would still be subject to the removal proceedings, and all the information regarding the Government's representation to him that he was non-deportable would be considered as part of the proceeding.  Because Plaintiff's Privacy Act claims seek only to address the accuracy of his file pertaining to documentation of promises made to him regarding his non-deportability, his claims do not challenge or disturb the actual removal proceeds and thus do not come within the jurisdiction-stripping provisions of Section 1252(g).

Plaintiff's assertion that his claims do not challenge the propriety of the removal proceedings against him is belied by the allegations in his FAC.[2]  Specifically, he alleges that DHS's failure to document the Government's purported promises that he would be non-deportable *caused* the adverse consequences he now suffers, including commencement of removal proceedings and the issuance of the Notice to Appear.  (*See, e.g.,* FAC, ¶ 66.)  Plaintiff repeatedly asserts that he informed DHS that the Notice to Appear was improvidently issued because it failed to document the details of the representations made to him during his criminal matter.  (FAC, ¶¶ 57, 73.)  Moreover, Plaintiff's request in the FAC to enjoin the removal proceedings is not limited to an injunction during the pendency of this litigation; Plaintiff also requests that Defendants be enjoined "from conducting any removal proceedings based on the assurances of the Defendants . . . that Plaintiff is non-deportable."  (FAC, p. 22-23.)  Plaintiff also seeks a declaration that DHS "has no jurisdiction to commence and/or continue the removal proceedings" based on the representations made to Plaintiff during the course of his criminal matter.  (FAC, ¶ 37.)  Similarly, Plaintiff seeks a declaration and injunctive relief based on the fact that the immigration detainer and the Notice to Appear are "barred by the written plea agreement's integration clause in the criminal matter[.]"  Because these requests all seek to invalidate the decision to commence removal proceedings, the Court has no jurisdiction to grant the injunctive and declaratory relief Plaintiff seeks under the Privacy Act.

---

[2] (Doc. 43, p 39 ("Plaintiff has not raised a challenge to Defendant's decision to adjudicate the case against him or the merits of that adjudication . . . if Plaintiff prevails in his Privacy Act claims he will only be entitled to the removal proceedings that conforms to the mandatory 6 C.F.R. § 5.34(e) standard and damages").)

Further, Plaintiff seeks monetary damages for his emotional distress and other non-pecuniary harm.  Based on the above allegations, however, Plaintiff's request for damages also arises from the removal proceedings and the Court is likewise without jurisdiction to entertain such a claim.  8 U.S.C. § 1252(g); *see also Patino v. Chertoff*, 595 F. Supp. 2d 310, 313-14 (S.D.N.Y. 2009) (dismissing claims for injunctive and declaratory relief as arising from or in connection with removal proceedings and thus precluding jurisdiction under 8 U.S.C. § 1252(g)).

Nevertheless, Plaintiff claims also encompass an alleged adverse determination that is distinct from the decision to commence removal proceedings against him.  Plaintiff alleges DHS's failure to maintain information regarding his non-deportable status has caused him to be classified by BOP with a PSF designation.  This PSF designation prevents his transfer to a minimum security facility, which is the only facility type that has the programs for which he was recommended during sentencing.  (FAC, ¶ 20.)  Thus, DHS's purported failure to maintain an accurate and complete file regarding his conviction and sentence has allegedly negatively affected the location of his confinement and the programs in which he can participate during incarceration.

Plaintiff's allegations regarding his PSF designation do not appear to necessarily implicate or arise "from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against" foreclosing jurisdiction under Section 1252(g).  However, for the reasons discussed below, while the Court appears to have subject matter jurisdiction over Plaintiff's claims that arise as a result of his PSF designation, Plaintiff's claims are otherwise deficient and should be dismissed.

**D.      Plaintiff's Claims are Deficient and Should Be Dismissed**

Even to the extent that the claims in the FAC avoid the jurisdiction-stripping ambit of Section 1252(g), they are otherwise deficient and should be dismissed.

**1.      Plaintiff's First and Third Causes of Action Are Duplicative**

Plaintiff's first and third causes of action attempt to state separate claims under Section 552a(g)(1)(D) [a catch-all claim] and Section 552a(g)(1)(C) [an accuracy/maintenance claim].  However, the allegations overlap and constitute only one claim that DHS failed to maintain accurate records regarding his plea and conviction which caused an adverse determination

pursuant to subsection (g)(1)(C).

Specifically, 552a(g)(1)(C) provides a civil remedy whenever an agency

> Fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

Subsection 552a(g)(1)(D) permits an individual to file a civil action whenever an agency "fails to comply with any *other* provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on the individual."

Plaintiff's claim pursuant to subsection (g)(1)(D) is predicated on Defendant's failure to maintain accurate records as required by 6 C.F.R. § 5.34(e). Section 5.34(e) was promulgated by DHS to implement the Privacy Act (*see* 68 Fed. Reg. 4056-01) and mirrors subsection 552a(g)(1)(C):

> Maintain all records that are used by the Department in making determinations about an individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to ensure fairness to the individual in the determination[.]

Thus, while Plaintiff asserts a claim pursuant to Subsection (g)(1)(C) and a claim pursuant to subsection (g)(1)(D), the allegations are redundant and constitute a single claim pursuant to Section 552a(g)(1)(C) that DHS failed to maintain records with accuracy, fairness, relevance, and completeness as reasonably necessary to ensure fairness, thereby resulting in an adverse determination. Plaintiff asserts that DHS's failure to adequately maintain the records regarding his conviction, i.e., that he was assured non-deportable status following his agreement to plead guilty to drug trafficking offenses, has caused two adverse determinations against him. First, DHS has made an adverse determination to commence removal proceedings. Second, BOP made an adverse determination to assign him a PSF designation, which has affected the location of his incarceration and the programs in which he can participate. As discussed below, Plaintiff's Section 552a(g)(1)(C) claim is not cognizable.

**2.      Plaintiff's 552a(g)(1)(C) Claim is Not Cognizable**

**a.      Plaintiff Fails to Adequately Allege Causation**

To adequately plead an accuracy/maintenance claim pursuant to Section 552a(g)(1)(C),[3] an individual must show (1) the government failed to fulfill its record keeping obligation; (2) which failure proximately caused the adverse determination; (3) that the agency failed intentionally or willfully to maintain the records, and (4) that the plaintiff suffered actual damages. *Rouse*, 567 F.3d at 417.

Although Plaintiff alleges two adverse determinations (the commencement of removal proceedings against him and the PSF designation), he fails to allege how Defendant's purported failure to maintain his file accurately caused these adverse determinations. Plaintiff has failed to show how the removal proceedings against him were caused by anything other than the nature of his underlying criminal offense. Plaintiff's underlying criminal conviction is related to trafficking in a controlled substance, which Plaintiff does not dispute. Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), aliens convicted of an "aggravated felony" after admission – which includes drug trafficking offenses (8 U.S.C. § 1101(a)(43)(B)) – are deportable and are ineligible for cancellation of removal (8 U.S.C. § 1229b(a)(3)). As recognized by the Supreme Court in *Padilla v. Kentucky*, "[u]nder contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date . . . his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." 559 U.S. 356, 363-64 (2010). Further, "[s]ubject to limited exceptions, this discretionary relief is not available for an offense related to trafficking in a controlled substance."[4] *Id*. at 364.

---

[3] Even to the extent Plaintiff's claims were considered under subsection (g)(1)(D), the elements are the same as those for a claim under subsection (g)(1)(C).

[4] The Supreme Court discussed the limited exceptions that would make an alien eligible for cancellation of removal proceedings. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682 n. 1 (2013) ("In addition to asylum, a noncitizen who fears persecution may seek withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and deferral of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Art. 3, Dec. 10, 1984, S. Treaty Co. No. 100-20, p. 20, 1465 U.N.T.S. 85; 8 C.F.R. § 1208.17(a) (2012). These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizens who establishes his eligibility. A conviction of an aggravated felony has no effect on CAT eligibility, but will render a noncitizen ineligible for withholding of

1    Here, even assuming the truth of Plaintiff's allegation, i.e., that the prosecuting attorney or

2    an ICE agent promised him he would be non-deportable as part of his plea agreement, this

3    assurance does not itself change the character or nature of his conviction, which is what subjects

4    Plaintiff to removal proceedings. As a result, Plaintiff has not alleged a sufficient causal

5    connection between the Government's failure to document the alleged promise to Plaintiff that he

6    would not be deported in conjunction with his plea and the removal proceedings that were

7    instituted as a result of his conviction. *See Rouse*, 567 F.3d at 417-418 (affirming district court's

8    dismissal of Privacy Act maintenance claim for failure to adequately allege a causative

9    relationship between Privacy Act violation and adverse consequence suffered).

10    The same is true with regard to Plaintiff's allegation that the Government's failure to

11    document the promise that he would not be deported if he pled guilty caused him to be assigned a

12    PSF designation. BOP regulations state that a PSF designation is assigned to *any* prisoner who is

13    not a citizen of the United States. According to BOP's Program Statement, the only way a PSF

14    designation would not be applied to a non-citizen prisoner is if ICE or the Executive Office for

15    Immigration Review (EOIR) has determined that deportation proceedings are unwarranted or there

16    is a finding not to deport at the completion of deportation proceedings. *See* BOP P. S. 5100.08,

17    Chapter 5, p. 8. Plaintiff alleges no facts to show anyone had authority or discretion to deem him

18    non-deportable such that BOP would not have applied or would have removed the PSF

19    designation. While Plaintiff alleges that assurances of his non-deportable status were given by

20    ICE Special Agent Phillip H. Maurer (*see* FAC, ¶ 18), there is nothing to establish this agent had

21    authority to bind ICE with regard to a finding that removal proceedings were unwarranted. Thus,

22    Plaintiff has not alleged facts showing that DHS's failure to document the alleged promise not to

23    deport him proximately caused BOP to classify him with a PSF designation.

24    Because there are no facts to show that the Government's failure to document that he was

25    "non-deportable" proximately *caused* either ICE to proceed with removal proceedings or BOP to

26    classify him with a PSF designation, Plaintiff fails to adequately state a maintenance or catchall

27

28    removal if he 'has been sentenced to an aggregate term of imprisonment of at least 5 years' for any aggravated
     felonies. 8 U.S.C. § 1231(b)(3)(B)."). Plaintiff maintains he was sentences to 84 months imprisonment. (FAC, ¶ 11.)

1   claim under the Privacy Act.

2         **b.**     **Plaintiff Fails to Adequately Allege Intentional and Willful Conduct**

3         Defendant correctly asserts that Plaintiff's allegations regarding willful and intentional

4   conduct on the part of DHS are merely boilerplate legal conclusions, and do not set forth sufficient

5   facts to demonstrate how DHS's actions were willful and intentional.  This deficiency was noted in

6   the Court's April F&R (*see* Doc. 35, 34:1-2), and it has not been cured on amendment.  Thus,

7   Plaintiff's claims are not cognizable because they do not sufficiently set forth facts showing

8   Defendant's conduct was willful and intentional.

9         **c.**     **Plaintiff Fails to Adequately Allege Actual Damages**

10        Defendant contends that Plaintiff's claims pursuant to Section 552a(g)(1)(C) and (D) do

11  not adequately allege actual damages.  Defendant argues that pursuant to the Supreme Court's

12  decision in *Federal Aviation Administration v. Cooper*, 132 S. Ct. 1441 (2012), damages for

13  emotional distress or offense to dignitary interests are not actual damages under the Privacy Act.

14  Because Plaintiff has only alleged emotional distress, he does not adequately allege actual

15  damages.  Moreover, even though Plaintiff alleges "special damages," this is too general an

16  allegation under *Iqbal*.  (Doc. 39, 7:9-8:3.)

17        In *Cooper*, the Supreme Court held that "Congress intended 'actual damages' in the Privacy

18  Act to mean special damages for proven pecuniary loss."  132 S. Ct. at 1452.  As a result, the

19  "Privacy Act does not unequivocally authorize an award of damages for mental or emotional

20  distress.  Accordingly, the Act does not waive the Federal Government's sovereign immunity from

21  liability for such harms."  *Id.* at 1456.  Accordingly, the term "actual damages" is "limited to

22  proven pecuniary or economic harm."  *Id.* at 1453.

23        Here, Plaintiff alleges that Defendant acted in disregard of the probability of causing

24  Plaintiff severe emotional distress (FAC, ¶ 51), that he has sustained "general and special damages

25  in an amount according to proof at the time of trial" (FAC, ¶¶ 53, 78), and Defendant's conduct

26  caused him "emotional distress causing chest pains and heart palpitations." (FAC, ¶ 49.)  These

27  allegations are insufficient to plead pecuniary or economic harm.  Emotional distress is not

28  considered an "actual damage" pursuant to *Cooper*, and Plaintiff's allegation that he has suffered

"special damages" is, as Defendant contends, a legal conclusion and not an actual allegation of damages sufficient to state a claim under *Iqbal*.  556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *see also Earle v. Holder*, No. 11-5280, 2012 WL 1450574, *3 (D.C. Cir. 2012) (affirming dismissal of Privacy Act claim where "nothing in [plaintiff's] pleadings could be construed as alleging he sustained pecuniary loss as a result of [defendant's] alleged Privacy Act violation"); *Scott v. Conley*, 937 F. Supp. 2d 60, 80 (D.D.C. 2013) (dismissing Privacy Act claim because plaintiff gave "no indication that he will be able to show that he sustained any 'actual damages' as a result of BOP's alleged retention of records").  Other than emotional distress, Plaintiff has stated no facts suggesting a pecuniary injury, and therefore his claim fails to adequately allege any actual damages.

### d.      Conclusion

For the reasons stated above, the Court recommends that Plaintiff's first and third causes of action alleging maintenance and catch-all claims be dismissed.  With respect to the adverse determination Plaintiff alleges involving the initiation of removal pleadings, jurisdiction is foreclosed under 8 U.S.C. § 1252(g).  Finally, even to the extent the Court retains jurisdiction over Plaintiff's Privacy Act claims that do not come within the ambit of 8 U.S.C. § 1252(g), the claims are deficient and no leave to amend should be granted.  Plaintiff has had two opportunities to set forth a cognizable Privacy Act claim pertaining to Defendant's purported failure to maintain accurate records and, due to the nature of the pleading deficiencies with regard to causation and damages, Plaintiff has demonstrated his inability to marshal the facts necessary to support his claims.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).  In sum, Plaintiff's first and third causes of action should be dismissed without leave to amend.

### E.      Plaintiff's Record Amendment Claim Pursuant to 5 U.S.C. § 552a(g)(1)(A)-(B)

Plaintiff again attempts to state a claim for record amendment pursuant to Section 552a(g)(2)(A).  Defendant asserts this claim must be dismissed because of Plaintiff's failure to exhaust his administrative remedies.  The Court agrees.

16

As discussed at length in the April 19, 2013, F&Rs (*see* Doc. 35, 18:25-25:12), the exhaustion requirements were not met with respect to an amendment claim. Moreover, for all the reasons stated in the F&Rs, any exhaustion that may have occurred after the complaint was filed is insufficient to satisfy the exhaustion requirements for purposes of this case. (*See* Doc. 35, 24:24-25:12.) Plaintiff was already informed that his amendment claim was dismissed without prejudice to filing a new action after exhaustion of administrative remedies had been completed. While Plaintiff claims that he has made adequate exhaustion attempts, his newest exhaustion attempts were made after this suit was filed. Even to the extent that those attempts properly exhausted administrative remedies, and the Court makes no finding in that regard, Plaintiff cannot reassert those claims by way of an amended complaint in this action; Plaintiff must allege any amendment claims in a new action. Therefore, the Court RECOMMENDS that Plaintiff's Privacy Act amendment claim be dismissed without prejudice to filing a new action for such a claim to the extent the claim does not come within purview of 8 U.S.C. § 1252(g).

### IV.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that:

1.   Plaintiff's request to file a sur-reply be DENIED and the document filed in sur-reply be STRICKEN (Doc. 44);

2.   Defendant's motion to dismiss be GRANTED;

3.   Plaintiff's Privacy Act claims pursuant to Section 552a(g)(1)(C) and (D) be dismissed with prejudice;

4.   Plaintiff's claim pursuant to Section 552a(g)(1)(A) be dismissed without prejudice to filing such a claim in a new action to the extent that it does not come within the purview of 8 U.S.C. § 1252(g);

5.   Judgment be entered in favor of the Defendant, and

6.   The case be administratively closed.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-eight (28) days of service of this recommendation, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 8, 2014**                              **/s/ Sheila K. Oberto**
                                                            UNITED STATES MAGISTRATE JUDGE